| David W. Scofield<br>**PETERS \| SCOFIELD**<br>*A Professional Corporation*<br>7430 Creek Road, Suite 303<br>Sandy, Utah 84093-6160<br>Telephone: (801) 322-2002 Ext. 102<br>Direct Dial: (801) 858-3402<br>Toll Free: (888) 296-3998<br>Facsimile: (801) 912-0320<br>Email: dws@psplawyers.com | **POMERANTZ LLP**<br>Jeremy A. Lieberman<br>Tamar A. Weinrib<br>600 Third Avenue, 20th Floor<br>New York, New York 10016<br>Telephone: (212) 661-1100<br>Facsimile: (917) 463-1044<br>Email: jalieberman@pomlaw.com<br>Email: taweinrib@pomlaw.com | **POMERANTZ LLP**<br>Patrick V. Dahlstrom<br>10 South La Salle Street, Suite 3505<br>Chicago, Illinois 60603<br>Telephone: (312) 377-1181<br>Facsimile: (312) 377-1184<br>Email: pdahlstrom@pomlaw.com |
| --- | --- | --- |

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

|  |  |
| --- | --- |
| EXKAE Ltd., Lead Plaintiff, and MARISA ELLIS, JOHN MARBACH, JARRETT PATTON, and LISA DAVIS, Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiffs,<br><br>    v.<br><br>DOMO, INC., JOSHUA G. JAMES, BRUCE FELT, FRASER BULLOCK, MATTHEW R. COHLER, DANA EVAN, MARK GORENBERG, NEHAL RAJ, and GLENN SOLOMON,<br><br>              Defendants. | Case No. 2:19-cv-00781-DAK-DAO<br><br>Hon. Judge Dale A. Kimball |

## LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

**TABLE OF CONTENTS**

**Page(s)**

PRELIMINARY STATEMENT ................................................................................ 1

    Statement of Facts .......................................................................................... 2

    Materially False and Misleading Statements Issued in the Offering Documents ............... 4

    Materially False and Misleading Statements Issued During the Class Period ................... 6

    The Truth Begins to Emerge ......................................................................... 8

ARGUMENT ...................................................................................................... 10

I.     Applicable Standards ................................................................................ 10

II.    The Complaint Adequately Alleges Violations of § 11 of the Securities Act ................. 10

    A.    Defendants' Arguments are Unavailing ................................................ 12

    B.    The Complaint Adequately Alleges Plaintiffs' Section 11 Standing ................... 16

III.   The Complaint Adequately Alleges Violations of § 10(b) of the Exchange Act ............. 17

    A.    The Complaint Adequately Alleges Falsity ........................................... 17

    B.    The Complaint Adequately Alleges a Compelling Inference Scienter ................. 20

        1.    The Complaint Adequately Alleges Defendants' Recklessness ............... 20

            a)    The CW Allegations Contribute to the Inference of Scienter ....... 21

            b)    Defendants' Statements Contribute to the Inference of Scienter .. 23

            c)    Defendants' Access to Information Contributes to the Compelling Inference of Scienter ................................................. 23

IV.   The Complaint Adequately Pleads Control Person Claims ............................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Kinder-Morgan, Inc.*,
340 F.3d 1083 (10th Cir. 2003) ........................................................................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................................11

*Better v. YRC Worldwide Inc.*,
No. 11-2072-KHV, 2012 U.S. Dist. LEXIS 136749 (D. Kan. Sept. 25, 2012).......................21

*Foman v. Davis*,
371 U.S. 178 (1962).........................................................................................25

*Freudenberg v. E\*Trade Fin. Corp.*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010)................................................................12

*Geo-Grp. Commc'ns, Inc. v. Chopra*,
No. 15 Civ. 1756 (KPF), 2016 WL 390089 (S.D.N.Y. Feb. 1, 2016) ...................................25

*Herman & MacLean v. Huddleston*,
459 U.S. 375 (1983).........................................................................................10

*Hildes v. Arthur Andersen LLP*,
734 F.3d 854 (9th Cir. 2013) ............................................................................17

*Ho v. Duoyuan Glob. Water, Inc.*,
887 F. Supp. 2d 547 (S.D.N.Y. 2012)................................................................24

*In re Amgen Inc. Sec. Litig.*,
544 F. Supp. 2d 1009 (C.D. Cal. Feb. 1, 2008) .......................................................13

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
324 F. Supp. 2d 474 (S.D.N.Y. 2004)................................................................11

*In re Cabletron Sys., Inc.*,
311 F.3d 11 (1st Cir. 2002)..............................................................................21

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005) ..........................................................................21

*In re Global Crossing, Ltd. Securities Litigation*,
    313 F. Supp. 2d 189 (S.D.N.Y. 2003)..................................................................16

*In re Gold Res. Corp. Sec. Litig.*,
    957 F. Supp. 2d 1284 (D. Colo. 2013), *aff'd,* 776 F.3d 1103 (10th Cir. 2015) .......................15

*In re Initial Pub. Offering Sec. Litig.*,
    241 F. Supp. 2d 281 (S.D.N.Y. 2003)..................................................................11

*In re Intuitive Surgical Sec. Litig.*,
    65 F. Supp. 3d 821 (N.D. Cal. 2014) ..................................................................20

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
    667 F.3d 1331 (10th Cir. 2012) ..........................................................................13

*In re Merck & Co. Sec., Derivative & ERISA Litig.*,
    No. 05-1151 (SRC), 2011 WL 3444199 (D.N.J. Aug. 8, 2011)...............................12

*In re Nature's Sunshine Products Securities Litigation*,
    486 F. Supp. 2d 1301 (D. Utah 2007)..................................................................19

*In re OSG Sec. Litig.*,
    971 F. Supp. 2d 387 (S.D.N.Y. 2013)..................................................................11

*In re Philip Servs. Corp. Sec. Litig.*,
    383 F. Supp. 2d 463 (S.D.N.Y. 2004)..................................................................20

*In re SemGroup Energy Partners, L.P. Sec. Litig.*,
    729 F. Supp. 2d 1276 (N.D. Okla. 2010)........................................................21, 23

*In re Thornburg Mortg., Inc. Sec. Litig.*,
    824 F. Supp. 2d 1214 (D.N.M. 2011), *aff'd sub nom. Slater v. A.G. Edwards
    & Sons,* 719 F.3d 1190 (10th Cir. 2013)..............................................................21

*In re Wachovia Equity Sec. Litig.*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011)..................................................................16

*In re Williams Sec. Litig.*,
    339 F. Supp. 2d 1242 (N.D. Okla. 2003)....................................................10, 20, 25

*In re Zagg Sec. Litig.*,
    No. 12-CV-852, 2014 U.S. Dist. LEXIS 15783 (D. Utah Feb. 7, 2014)...........20, 23

*Institutional Inv'rs Grp.v. Avaya, Inc*., 564 F.3d 242 (3d Cir. 2009) ...........................24

*Makor Issues & Rights, Ltd. v. Tellabs Inc., ("Tellabs II)*
    513 F.3d 702  (7th Cir. 2008) ..............................................................................24

iii

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011)..........................................................................................................17, 20

*Mishkin v. Zynex Inc.*,
    No. 09-cv-00780-REB-KLM, 2011 U.S. Dist. LEXIS 34467 (D. Colo. Mar.
    30, 2011) ...........................................................................................................................21

*N.J. v. Sprint Corp.*,
    531 F. Supp. 2d 1273 (D. Kan. 2008).................................................................................11

*Nakkhumpun v. Taylor*,
    782 F.3d 1142 (10th Cir. 2015) ........................................................................................18

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
    455 F. App'x 10 (2d Cir. 2011) ........................................................................................24

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015)...........................................................................................................13

*Perry v. Duoyuan Printing, Inc.*,
    No. 10 Civ. 7235 (GBD), 2013 WL 4505199 (S.D.N.Y. Aug. 22, 2013) .....................16, 17

*Pirraglia v. Novell, Inc.*,
    339 F.3d 1182 (10th Cir. 2003) ........................................................................................20

*S. Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) ............................................................................................24

*San Juan Citizens All. v. Stiles*,
    654 F.3d 1038 (10th Cir. 2011) .....................................................................................20, 25

*Schwartz v. Celestial Seasonings, Inc.*,
    124 F.3d 1246 (10th Cir. 1997) ........................................................................................11

*Scott v. ZST Digital Networks, Inc.*,
    896 F. Supp. 2d 877 (C.D. Cal. 2012) ..............................................................................23

*Swan Glob. Invs., LLC v. Young*,
    No. 18-cv-03124-CMA-NRN, 2019 WL 5095729 (D. Colo. Aug. 20, 2019)...................25

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)........................................................................................................10, 20

*Utesch v. Lannett Co.*,
    385 F. Supp. 3d 408 (E.D. Pa. 2019) ................................................................................23

*Weinstein v. McClendon*,
    757 F.3d 1110 (10th Cir. 2014) ........................................................................................20

*Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*,
    426 F. Supp. 3d 864 (D. Kan. 2019).................................................................14

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ...........................................................................23

**Statutes**

15 U.S.C. § 77i(a) ...............................................................................................11

15 U.S.C. § 77k(o) ...................................................................................... *passim*

15 U.S.C. § 77o....................................................................................................25

15 U.S.C. § 78j(b) ...................................................................................... *passim*

15 U.S.C. § 78t(b) ................................................................................................25

**Rules**

Fed. R. Civ. P. 8(a) ..............................................................................................11

Fed. R. Civ. P. 9(b) ..............................................................................................11

Fed. R. Civ. P. 12(b)(6)........................................................................................10

Fed. R. Civ. P. 15(a) ............................................................................................25

**Other Authorities**

17 C.F.R. § 229.303(a)(3).....................................................................................25

17 C.F.R. § 229.503(c)..........................................................................................25

## PRELIMINARY STATEMENT

Domo has one product- a cloud-based platform designed to provide all employees in an organization with real time access to its data. At all relevant times, Defendants professed to focus specifically on growing Domo's business with large enterprise customers and expanding its footprint internationally. The Securities Act Defendants'[1] statements in the Offering Documents filed in connection with Domo's IPO, conveyed strength and success in both those efforts, providing nary a hint that the reality looked far different, that Domo in fact struggled to grow its enterprise and international businesses due to major defects in strategy, and that its billings growth rate therefore faced significant risk of deceleration. The materiality of the misleading statements is beyond peradventure given that Domo's enterprise business accounted for half its revenue and international accounted for a quarter of its revenue. Defendants also consistently made clear that billings are a "key business metric." The Securities Act Defendants' "virtually absolute" Section 11 liability is beyond reasonable dispute.

The misleading statements did not end with the filing of the Offering Documents. The Exchange Act Defendants continued to mislead the market throughout the Class Period, making statements with scienter touting Domo's "success with the big enterprise customers," its use of the "right strategies with these enterprise customers," "strong performance…in enterprise," touting billings growth and strength expanding its international business. However, as *twelve* former employees (including a former President and a former COO of Domo) confirm, Defendants knew they faced nearly insurmountable obstacles, described below, to growing their enterprise and international businesses, and that billings growth therefore risked deceleration. As explained further below, Section 10(b) liability is thus sufficiently alleged.

Defendants ignore all these allegations in arguing that because their numbers and metrics

---

[1] The terms "Securities Act Defendants" and "Exchange Act Defendants," are defined in the Complaint.

1

were literally accurate, they met their disclosure obligations. That is not how the securities laws operate.  Literal accuracy of numbers does not suffice, particularly as this is not a case about "fudged numbers." Indeed, the market's reaction to the corrective disclosure along with Defendants' subsequent admissions, bely claims of adequate disclosure. Domo's stock declined sharply, a flood of analysts downgraded the stock due to revelations of weaknesses in enterprise, international and billings, analysts observed that Defendants' misstatements caused "incorrect[] optimism…that the enterprise business would show evidence of acceleration," and Defendants' admitted that their "over focus" on a defective business strategy caused these weaknesses.

Defendants also attempt to brush off their securities law violations and the ensuing devastating losses to investors, as mere "business disappointments."  However, their attempts to paint this case as simply "second guess[ing]…chosen business strategies" fall flat.  This isn't a case about second-guessing business strategies; it's about Defendants' issuance of misleading statements in Offering Documents, in SEC filings, and on earnings calls that failed to reveal material facts about Domo's true state of affairs and which contradicted their public statements.

## Statement of Facts[2]

Domo operates a cloud-based platform that purportedly digitally connects everyone from the chief executive officer to the frontline employee with the people, data, and systems in an organization, giving them access to real-time data and insights, and allowing them to manage business from smartphones. ¶ 34.  Domo uses its own platform internally, providing each Defendant and the rest of Domo's employees with real time access to the Company's data. ¶ 35.

On June 1, 2018, Domo filed a registration statement on Form S-1 with the SEC in connection with its IPO, which, after amendment, was declared effective by the SEC on June 28,

---

[2] All ¶ __ references are to the Amended Class Action Complaint For Violations Of The Federal Securities Laws, filed on May 22, 2020, Dkt. No. 42 ("Complaint").

2

2018. ¶ 36.  On June 29, 2018, Domo filed a prospectus in connection with the IPO on Form 424B4, which formed part of the Registration Statement. *Id.*  In these Offering Documents, and in SEC filings throughout the Class Period, Defendants touted the Company's billings growth, its focus on and success with enterprise customers, and the substantial opportunity for growth internationally. ¶ 38.  However, as multiple former employees confirmed, in the years leading up to the IPO and throughout the Class Period, Defendants did not employ an effective sales strategy and thus struggled to acquire enterprise customers.  ¶ 39.  That struggle negatively impacted Domo's ability to grow billings at the pace Defendants repeatedly touted *Id.* Moreover, though highlighting the substantial opportunity for Domo's international business, as well as the significance of that business to Domo's overall success, the Company struggled to grow its international business and did not spend its international marketing effectively. *Id.*

These confidential witnesses ("CWs")[3], all of whom corroborate one another, explained that Domo struggled to grow its enterprise business due to an unfocused sales effort, failure to "open up its platform" to integrate with companies' existing data warehouses, enterprise companies' concerns over data security, and a misdirected marketing pitch that targeted c-suite executives instead of the data analysts focused on the "business intelligence" of the companies (CW1, CW2, CW3, CW4, CW6, CW9, CW11).  ¶¶ 40, 41, 43, 44, 46, 47, 48, 51.

Indeed, Domo struggled so significantly to grow its enterprise business that it began classifying international revenue as enterprise revenue, even if the international company did not qualify as an enterprise, and improperly booked up-front revenue on multi-year Enterprise License Agreements (CW1). ¶ 40.  Domo consistently failed to achieve sales goals, which became a common topic of discussion at the Company (CW3, CW4, CW10). ¶¶ 44, 46, 50.

---

[3] The twelve CWs include senior executives, *e.g.,* President, COO/Chief Analytics Officer, Chief of Staff, Senior VP of Consulting, and a VP, Field, Partner and Experiential Marketing at Domo.

Defendants knew about Domo's struggles generating enterprise business. ¶¶ 45, 53 (CW8). Domo used its own platform internally to provide *all employees* with up-to-date access to information, including acquisition of new enterprise customers. (CW2, CW3). Moreover, Defendant James kept changing the sales pitch because he observed that the Company's lack of identity and unclear sales message hurt its ability to attract enterprise customers (CW6, CW7, CW9, CW10, CW11). ¶¶ 47, 48, 49, 50, 51. Defendant James joined sales staff on visits to potential customers and saw these struggles firsthand. ¶ 47.

Defendants also "oversold" Domo's ability to grow internationally though knowing its marketing efforts were falling short. ¶ 52. CW12, who had direct involvement with the international marketing analytics, confirmed that Domo did not utilize its international marketing budget well. *Id.* Indeed, according to CW6, Domo's international business plateaued no later than 2019 in part because of internal conflict that led to firings. *Id.*

Defendant James "kept really close tabs" on acquisition of new enterprise customers and billings growth according to CW8, and thus knew that Domo's enterprise and international businesses struggles impacted its ability to maintain its rate of billings growth. ¶ 53. According to CW4, Defendants had access to and kept track of billings using the Domo platform and Netsuite (CW4, CW5, CW6). ¶ 54.

## Materially False and Misleading Statements Issued in the Offering Documents

The Offering Documents contained materially false and misleading statements regarding Domo's enterprise business, international business, and billings growth, in violation of § 11 of the Securities Act. ¶ 55.

*Billings and Growth Strategies:* The Offering Documents detailed the increase in customers and billings year over year, ¶¶ 56, 58, identified billings as a *key business metric*, and stated that "[b]illings reflect sales to new customers plus subscription renewals and upsells to

4

existing customers, and represent amounts invoiced for subscription, support and professional services." ¶ 59. Additionally, with regard to Domo's growth strategies, the Offering Documents touted that "[t]he market for [Domo's] platform is large and underpenetrated, as any organization of any size and in any industry is a potential customer of Domo," and touted the "substantial opportunity to add additional customers both in the United States and internationally." ¶ 65.

*Enterprise Business:* The Offering Documents highlighted the Company's "***Proven Enterprise Readiness***" as one of Domo's competitive strengths. ¶ 57. In support of this, the Offering Documents asserted that Domo "ha[d] invested significantly to broaden [its] platform capabilities and enhance security and scalability requirements for the enterprise." *Id.* The Offering Documents also touted the growth of Domo's "enterprise customer base," and made clear that that it was "increase[ing] [its] focus on attracting new enterprise customers and expanding [its] footprint within [its] current enterprise customers." *Id.* Additionally, the Offering Documents touted the strength of Domo's enterprise business revenue and subscription retention rates, enterprise business growth strategy, and represented that enterprise revenue amounted to almost half of Domo's total revenue. ¶ 60. Defendants also made clear that in focusing sales efforts toward acquiring new enterprise customers, "[f]rom the beginning, we targeted CEOs as a key user of our platform. ¶ 61. That concept has fundamentally influenced every aspect of the Domo platform from architecture to user experience." *Id.*

*International Business:* The Offering Documents touted Domo's focus on expanding its international footprint, emphasizing expected growth internationally *based on Defendants' current expansion efforts.* ¶¶ 62-63. The Offering Documents also touted Domo's international go-to market partnerships, which purportedly aided in driving the Company's growth. ¶ 64.

*Risk Disclosures:* The Offering Documents included a generic "catch-all" warning regarding revenue variability due to "enterprise buying patterns and timing of large renewals."

¶ 59.    Specifically, the Offering Documents contained generic, boilerplate representations concerning the risk that the Company's growth in billings, acquiring enterprise customers, and expanding internationally could fluctuate as a result of, among other issues outside of Domo's control, seasonal sales cycles and unexpected implementation challenges with enterprise customers. ¶ 66. These generic risk warnings did nothing to alert investors to risks that had already materialized with respect to its billings and enterprise customer growth. *Id,*

The Offering Documents were negligently prepared and, as a result, contained the foregoing materially misleading statements and were not prepared in accordance with the rules and regulations governing their preparation. ¶ 67. As set forth below, in reality, Domo struggled to develop and maintain a consistent GTM strategy. *Id.   Inter alia*, Domo had significant difficulty acquiring new enterprise customers because its platform could not integrate with other data sharing services, targeted too many business segments, did not have a consistent sales message and defined identity, and targeted its sales pitch at c-suite executives rather than data analysts. *Id.*  Defendants overfocus on enterprise customer acquisition, and deficient strategy, as well as ineffective efforts to grow internationally, caused Domo's billings growth to decelerate, thus causing a negative impact to both billings and revenues.  *Id., ¶ 68.*

**<u>Materially False and Misleading Statements Issued During the Class Period</u>**

The Class Period begins on June 29, 2018, when Domo securities began trading on the NASDAQ pursuant to the misleading Offering Documents.  ¶ 69.  Throughout the Class Period, Defendants filed financial statements (signed by Defendant Felt) and held earnings calls (with statements by Defendants Felt and James) containing misleading statements about Domo's enterprise business, international business, billings growth, and risks.

*Billings*: Defendants issued countless statements touting Domo's year-over-year billings growth and "accelerated billings" growth. *See, e.g.* ¶¶ 70, 72, 81, 82, 83, 89, 90, 92, 99, 100, 101,

6

106. They made clear that for Domo, billings is a "key business metric." ¶¶ 79, 86, 93, 106.

*Enterprise Business*: Defendant James further represented that Domo had the means to "successfully execute our business plan." ¶ 70.  Many of Defendants' statements emphasized the strength of Domo's enterprise business, noting "strong performance in…enterprise," "strong enterprise referrals," representing that they are seeing the "enterprise business grow," and that "enterprise customers were a key driver of revenue growth." ¶¶ 73, 82, 86, 89, 99, 104. Defendants James and Felt consistently conveyed that, "we've had that success with the big enterprise customers…," "we have the right strategies with these enterprise customers…,"  and, "we're seeing just the beginning of all the effort that we've put into enterprise sales, enterprise sales management and marketing and marketing focus." *Id.*  Defendants made clear that they were focused on growing Domo's enterprise business, and as such, the Company shifted sales and marketing activities, as well as marketing spending, towards acquiring enterprise business. ¶¶ 57, 61, 73, 76, 83, 86, 89, 94, 104.  Defendants assured the market that, enterprise customers were "push[ing] our products deeper into their business processes." ¶ 81.

*International Business:* Defendants issued statements touting "notable growth in our international business," and stating that it is "growing very rapidly," that "everything looks great in terms of the customer bases," that they'd done "an excellent job at building their business…we can count on continued high growth from them," describing their focus on international growth, and making clear that, "***long-term growth depends in part on being able to expand internationally on a profitable basis.***" ¶¶ 72, 78, 86, 87, 90, 96, 107.  Domo's international business accounted for nearly a quarter of revenue. ¶¶ 72, 90, 101.

*Risk Disclosures*: Defendants' filings included ineffective boilerplate warnings— themselves misleading-- which did nothing to alert investors to current and specific risks to Domo's enterprise business.  *See, e.g.,* ¶¶ 77, 95, 105.

***SOX Certifications***: Defendants James and Felt also signed misleading SOX certifications. ¶¶ 75, 85, 97, 103. Therein, Defendants represented that, " this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report…" They further stated that they, "Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, ***to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities***, particularly during the period in which this report is being prepared." *Id.*

The Exchange Act Defendants' statements, summarized herein and detailed in ¶¶ 69-107 of the Complaint, were false and misleading because, 1) Domo experienced weakness in its enterprise and international businesses; 2) as a result, Domo faced an increased risk to its billings growth; 3) this created a high likelihood of material negative impact to the Company's financial results. Specifically, the Exchange Act Defendants failed to reveal that Domo struggled to develop and maintain a consistent GTM strategy. *Inter alia*, Domo struggled to acquire new enterprise customers because its platform could not integrate with other data sharing services, it targeted too many business segments, did not have a consistent sales message and defined identity, and directed its sales pitch to c-suite executives rather than data analysts. Unbeknownst to the market, Defendants overfocus on enterprise customer acquisition, despite these hurdles, as well as its ineffective efforts to grow internationally impacted in part by the overfocus on the enterprise business, negatively impacted billings and raised the risk that Domo could not sustain an accelerated (or even steady) rate of billings growth.

### The Truth Begins to Emerge

On September 5, 2019, after-market hours, Domo issued a press release announcing its

financial results for the second quarter of 2020, with guidance for the third quarter and full fiscal year 2020 that fell short of market expectations. ¶ 109. The Company revealed that Domo had suffered a deceleration of billings growth. *Id.* Specifically, ***Domo reported billings growth of 9% year over year to $39 million versus the 17%, or $42 million in growth that had been expected. Moreover, management guided FY20 billings down to $172 million from $198 million prior.*** *Id.* The Exchange Act Defendants also disclosed that they now expected third quarter revenue of $41.5-42.5 million versus a consensus of $44.2 million, and a loss of $1.04-1.00 per share versus a consensus of a $0.91 loss per share. *Id.* Additionally, Defendants revealed a full year 2020 view with revenue of $168-169 million versus a consensus of $173.7 million, and a loss of $4.10-4.00 per share versus a consensus of a $3.82 loss per share. *Id.*

The Exchange Act Defendants held an earnings call the same day during which Defendant James admitted to weakness in Domo's enterprise business and explaining that the billings growth deceleration occurred because, "***we were over focused in pursuing larger enterprise transactions.***" ¶ 110. Defendant Felt echoed Defendant James' sentiments regarding the overfocus on large enterprise customers and confirmed a new shift in strategy. ¶ 111. Defendant Felt also elaborated on the reduced guidance and expectations that billings would not improve any time soon. ¶ 110. The Exchange Act Defendants also revealed weakness in Domo's international business, explaining that despite their investment, "they didn't perform." ¶ 112.

Shocked by the revelations, analysts issued reports downgrading Domo, citing the "disappointing" report and guidance, weakness in Domo's enterprise (attributed to Domo's admission that it "over-indexed its focus on large enterprise deals," the fact that, "clearly DOMO is still trying to find its footing with respect to the right go-to-market strategy," and blaming Defendants' misstatements for causing "incorrect[] optimism…that the enterprise business would show evidence of acceleration") and international businesses, and decelerating billings growth.

¶¶ 113-17.  The revelation of Defendants' fraud caused Domo's stock price to fall 37.45%, to close at $15.77 per share on September 6, 2019, or 24.9% below the IPO price of $21.00. ¶ 118.[4]

**ARGUMENT**

### I.   Applicable Standards

When analyzing a complaint pursuant to Fed. R. Civ. P. 12(b)(6), all factual allegations are taken as true and construed in the light most favorable to the non-moving party. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[5] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "In the securities context, Rule 12(b)(6) dismissals are difficult to obtain because the cause of action deals primarily with fact-specific inquiries such as materiality." *In re Williams Sec. Litig.*, 339 F. Supp. 2d 1242, 1252 (N.D. Okla. 2003).

### II.   The Complaint Adequately Alleges Violations of § 11 of the Securities Act

The Securities Act imposes a "stringent standard of liability" against any individual who signs a registration statement with an untrue statement of material fact or omitting to state material facts required to make the statements therein not misleading. Under § 11, "[i]f a plaintiff purchased a security issued pursuant to a registration statement, he need only show a material misstatement or omission to establish his *prima facie* case. Liability against the issuer of a security is virtually absolute, even for innocent misstatements." *Herman & MacLean v.*

---

[4] Defendants have not moved for this Court to take judicial notice of exhibits 12, 14, and 15 (Dkt. Nos. 46-12, 46-14, and 46-16). None are referenced in the Complaint and one is dated after the Class Period.  If the Court decides to take judicial notice of these exhibits regardless, they can be considered only for their existence, not for the truth of the matters asserted therein.

[5] Internal citations and quotations are omitted unless otherwise indicated.

*Huddleston*, 459 U.S. 375, 382 (1983). Securities Act claims are thus governed by Fed. R. Civ. P. 8(a)'s notice pleading standard. *Schwartz v. Celestial Seasonings, Inc*., 124 F.3d 1246, 1252 (10th Cir. 1997). Rule 8(a)(2) requires nothing more than "a short and plain statement of the claim showing that the pleader is entitled to relief," and "do[es] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 570 (2007). Defendants argue that the Securities Act claims "sound in fraud" because they arise from the same nucleus of facts as the Exchange Act claims, but courts in the Tenth Circuit are clear that where allegations of fraud are expressly disavowed as to Securities Act claims (*See, e.g.*, ¶ 133), those claims do not trigger the heightened pleading standard. *See N.J. v. Sprint Corp.*, 531 F. Supp. 2d 1273, 1285 (D. Kan. 2008); *See also In re OSG Sec. Litig.*, 971 F. Supp. 2d 387, 405-06 (S.D.N.Y. 2013) ("Plaintiffs' assertion that . . . 'Defendants knew or should have known' of the misstatements or omissions [in the registration statement] does not constitute an allegation of fraud, but rather of negligence."). The *Sprint* court reasoned that, "[a] contrary result would effectively preclude plaintiffs from filing suit under Section 11 and Section 12(a)(2) as well as Section 10(b)(5). There is no suggestion that Congress intended such an incongruous approach." *Id.* Plaintiffs have alleged a non-fraudulent basis for §11 liability, to wit, that the Securities Act Defendants signed Offering Documents containing untrue statements of material fact. ¶¶ 55-68, 133.[6]

Specifically, the Complaint alleges that the negligently prepared Offering Documents contained materially misleading statements regarding Domo's billings growth, international

---

[6] The § 11 claim here satisfies Rule 9(b) nonetheless. Rule 9(b) requires only that Plaintiffs allege the circumstances of fraud with particularity. *See In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 501, 503 (S.D.N.Y. 2004). The Complaint sufficiently, (1) specifies the misleading statements, (2) identifies the speaker, (3) states where and when the statements were made, and (4) explains why the statements were fraudulent. *Id.* at 501; *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 327 (S.D.N.Y. 2003).

11

growth, and enterprise business.  Contrary to the statements in the Offering Documents (set forth above), Domo overfocused on trying to grow its enterprise business (unsuccessfully) despite grave deficiencies in an ineffective strategy, including: its failure to develop and maintain a consistent GTM strategy, the inability of its platform to integrate with other data-sharing services, the fact that it targeted too many business segments, its inconsistent sales message, its lack of defined identity, and the fact that it misdirected its sales pitch at c-suite executives instead of data analysts.  Defendants also touted their focus on international growth though their ineffective marketing efforts caused growth to plateau.  These struggles raised the risk that Domo's billings growth would decelerate.  The materiality of the misstatements is undeniable given that Domo's enterprise business accounted for almost half its revenues, its international business accounted for approximately a quarter of its revenues, Defendants admitted that "long-term growth depends in part on being able to expand internationally on a profitable basis," and identified billings as a "key business metric."  Section 11 liability is thus sufficiently pled.

### A.    Defendants' Arguments are Unavailing

None of Defendants' arguments negate their "virtually absolute" liability.  First, though acknowledging that the Complaint is not alleging that specific numbers like billings metrics and earned revenue are literally inaccurate, Defendants nonetheless argue that these are "accurate statements of historical fact," and thus inactionable. Def. Br. at 11.  Defendants miss the point.  "[S]tatements, although literally accurate, can become, through their context and manner of presentation, devices which mislead investors."  *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 180 (S.D.N.Y. 2010); *In re Merck & Co. Sec., Derivative & ERISA Litig.,* No. 05-1151 (SRC), 2011 WL 3444199, at \*9 (D.N.J. Aug. 8, 2011).  For that reason, the disclosure required by the securities laws is measured not by literal truth, but by the ability of the material to accurately inform rather than mislead investors.  *Id.*  Even if the numbers were literally accurate,

it is the accompanying statements that misled investors, representing that Domo had "***proven enterprise readiness***" as a competitive strength, touting its capabilities to attract new enterprise customers and expand its "footprint within [its] current enterprise customers," touting the purported strength of Domo's enterprise business revenue and subscription retention rates," and representing the market for Domo's platform as "large and underpenetrated."  A reasonable investor reads a public statement in context, not in isolation. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190, (2015).  As confirmed by ***twelve*** CWs corroborating one another (and the corrective disclosure at the end of the Class Period) these statements could not have been further from the truth.  Defendants struggled to grow their enterprise business for the reasons stated above.  Defendants' statements were misleading because they "affirmatively create[d] an impression of a state of affairs which differ[ed] in a material way from the one that actually exist[ed]."  *In re Amgen Inc. Sec. Litig.,* 544 F. Supp. 2d 1009, 1028 (C.D. Cal. Feb. 1, 2008).

Second, Defendants cherry pick pieces of allegations and ask the Court to view them in isolation as inactionable "opinions."  Even assuming *arguendo* that any of these sound bites are "opinions," they do not "fairly align[] with the information in [Defendants'] possession at the time," and are thus actionable.  *Omnicare,* 575 U.S. at 188-89.  Defendants' statements assuring the market regarding its "***Proven Enterprise Readiness***" and broad platform capabilities were not conveyed as statements of "belief" or "opinion," but rather stated as fact. Def. Br. at 12. Indeed, the Tenth Circuit case Defendants cite does not discuss "opinions" at all but rather, in the context of materiality, addresses "vague … management-speak upon which no reasonable investor would base a trading decision." *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1340 (10th Cir. 2012).  Defendants' statements here concerned their strategy and capabilities, which they characterized as "*proven*" for their enterprise business, ***comprising almost 50% of Domo's***

13

*revenue*, without revealing the many issues that actually rendered their strategy ineffective. The materiality of Defendants' statements, conveyed as *fact*, is therefore undeniable.

Statements regarding Domo's expanding customer base both domestic and abroad and its ability to execute on global opportunity also do not qualify as opinions and were not expressed as such.  Without any disclosure as to Defendants' difficulties expanding Domo's enterprise customer base and international business, two self-described foci during the Class Period, the above statements were misleading.   The significance of statements regarding Domo's enterprise and international businesses to investors is undeniable given that they account for half and a quarter of Domo's revenues respectively.  Moreover, Defendants did not couch their statement that the market for its platform was "large and underpenetrated," as one of belief or opinion, but rather characterized it as a fact and a "key component[] of our growth strategy." In any event, as CW 11, *President of Domo at the time of the IPO*, made clear, the market for Domo's platform has always been "incredibly crowded," hardly "large and underpenetrated." ¶ 51.

Third, Defendants cite generally to a few partial statements from the Complaint and claim the "bespeaks caution" doctrine applies, which protects forward-looking statements accompanied by meaningful cautionary language.  Without any substance to back it up, Defendants simply state in a conclusory one-line argument that "These statements were accompanied by cautionary language."  To the extent any of the cited statements are forward-looking, they remain actionable for two reasons.  First, the Complaint is clear that the risk disclosures, false and misleading on their own, were generic "catch all" warnings that did not alert the market to realized risks regarding Domo's enterprise business, international business, and billings growth.  *Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*, 426 F. Supp. 3d 864, 870 (D. Kan. 2019); ¶¶ 59, 66. Nothing in the risk disclosures—all written as "hypotheticals"—alerted investors to specific current risks, *e.g.,* Domo's unclear marketing message, lack of identity, misdirected sales pitches,

14

ineffective international business strategy, and decelerating billings growth.    Second, the statements Defendants identify are inextricably intertwined with statements of current or historical fact.    Particularly given the aforementioned lack of adequately tailored cautionary warnings, such "mixed statements" are not entitled to protection.  *See In re Gold Res. Corp. Sec. Litig.,* 957 F. Supp. 2d 1284, 1295 (D. Colo. 2013), *aff'd,* 776 F.3d 1103 (10th Cir. 2015).

Fourth, attempting to fit a square peg through a round hole, Defendants argue that they disclosed that Domo targeted too many businesses, but then only reference statements in which they describe the many purported capabilities of the platform—not the potential businesses they targeted to use it.  Def. Br. at 14.  They then argue that the Complaint does not connect this omission to weak billings or issues in Domo's enterprise or international businesses.  Not so. The Complaint is explicit that Domo lacked a clear identity and thus had an ever-shifting and unfocused marketing message that targeted too many businesses and stymied its efforts to grow. The Complaint further alleges that Defendants misdirected their sales pitch at c-suite executives,[7] and that this ineffective approach further hampered enterprise client acquisition.    As the Complaint alleges, Defendants' enterprise business struggles and ineffective efforts to grow internationally, negatively impacted billings and raised the risk that Domo's billings growth rate would decelerate.  Indeed, Defendant James ultimately admitted that billings growth deceleration occurred because, "we were over focused in pursuing larger enterprise transactions." ¶ 110.

Lastly, Defendants argue that the alleged omissions are inactionable because Domo's enterprise customer base grew to 460, its international business "kept pace," and billings grew. Def. Br. at 15.  This argument ignores Defendants' own admission that its 460-count enterprise customer base indicated, "insufficient new customer activity to compensate for those efforts"

---

[7] Though mentioning that they "targeted CEOs as a key user of our platform," Defendants did not reveal that this marketing strategy did not work.

("efforts" refers to their ineffective strategy of over focusing on pursuing large enterprise business). ¶ 111.  Indeed, multiple CWs employed at Domo at the time of the IPO confirm that Domo struggled to grow its enterprise business. ¶¶ 40-51.  Defendants further admitted that Domo's international business "didn't perform," consistent with statements by CW12 that Domo did not utilize its marketing budget well, and by CW6, that Domo's international business plateaued. ¶¶ 52, 112.  Moreover, regarding billings, the Complaint alleges that billings growth decelerated, not that it stopped altogether. ¶¶ 10, 11, 109, 114.

**B.**      **The Complaint Adequately Alleges Plaintiffs' Section 11 Standing**

It is well-accepted that "[t]he pleading requirement for Section 11 standing is satisfied by general allegations that Plaintiff purchased pursuant to or traceable to [a] false registration statement." *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 373 (S.D.N.Y. 2011). As explained in *In re Global Crossing, Ltd. Securities Litigation*, 313 F. Supp. 2d 189, 208 (S.D.N.Y. 2003), "the pleading requirement is not elaborate" and Plaintiffs "have not been required to explain how their shares can be traced."  Plaintiffs satisfy this minimal requirement; they each allege that they "purchased Domo securities pursuant and/or traceable to the Offering Documents issued in connection with the Company's IPO." ¶ 18. Given that "only one effective registration statements was issued on behalf of" Domo, and Plaintiffs allege that they acquired securities in or traceable to the IPO, the tracing requirement is met. *See Perry v. Duoyuan Printing, Inc.*, No. 10 Civ. 7235 (GBD), 2013 WL 4505199, at *10 (S.D.N.Y. Aug. 22, 2013).

That Lead Plaintiff EXKAE initially acquired Domo securities prior to the IPO does not negate its standing.  EXKAE originally acquired 237,202 shares of Domo Series D-2 Preferred Stock on or around June 6, 2017.  *See* Dkt. No. 18-3.  On June 1, 2018, Domo filed its initial registration statement with the SEC.  ***On June 15, 2018, EXKAE's preferred Domo shares converted into 15,813 shares of Domo common stock pursuant and traceable to the***

16

***Registration Statement.*** *Id.* On June 28, 2018, the SEC declared Domo's Registration Statement effective, and the Company conducted its IPO between June 29 and July 3, 2018. As such, EXKAE's acquisitions of Domo common stock were traceable and pursuant to the Registration Statement and thus has Section 11 standing. *See* 15 U.S.C. § 77k(a). *Hildes v. Arthur Andersen LLP*, 734 F.3d 854 (9th Cir. 2013), is instructive. There, Hildes previously held securities in another company which converted to the securities of the defendant company pursuant to a Registration Statement upon consummation of a merger. The *Hildes* court held that, "because the exchange of shares—which occurred after the Registration Statement was filed—constituted Hildes' acquisition of those securities pursuant to a registration statement, [Hildes] has stated a potentially meritorious Section 11 claim." *Id.* at 863-64. As in *Hildes*, EXKAE's "subsequent losses were caused by the misrepresentations in that registration statement. This is enough to state a Section 11 claim." *Id.* at 863.

## III.    The Complaint Adequately Alleges Violations of § 10(b) of the Exchange Act

To state a claim under Section 10(b) of the Exchange Act, a plaintiff must allege six elements; Defendants argue that only two have been inadequately pled: (1) "a material misrepresentation or omission by the defendant," and (2) "scienter." *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011). Defendants thus concede that the Complaint adequately alleges the remaining elements of the claim. Moreover, as set forth below, the Complaint also adequately alleges material misstatements and scienter.

### A.    The Complaint Adequately Alleges Falsity

To state a 10b–5 claim, a plaintiff must plead that the defendant made a false or misleading statement of material fact or failed to state a material fact necessary to make a statement not misleading. To plead a material misrepresentation or omission adequately, a plaintiff need merely "specify each fraudulent statement, explain why the statement was

misleading, and allege with particularity his basis for believing that the statement was false." *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1147 (10th Cir. 2015); *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1099-1100 (10th Cir. 2003). Plaintiffs have done so here. The Complaint alleges that throughout the Class Period, Defendants issued statements (detailed above) touting the strength of Domo's enterprise business and growth strategy, its billings growth, and the substantial opportunity in its international business. In reality, Domo experienced weakness in its enterprise and international businesses and faced increased risk to its billings growth as a result, which created a high likelihood of material negative impact to Domo's financial results.

Rather than proffering arguments specific to the falsity of the alleged misstatements *constituting the Section 10(b) Exchange Act claims*, Defendants largely refer the Court back to its arguments regarding the misstatements constituting the *Section 11 Securities Act claim*.[8] Those arguments are as unavailing as to the Section 10(b) claim as they are as to the Section 11 claim. For the reasons stated in response to those arguments above (*see* Section II.A), these arguments are similarly unavailing here. For example, Defendants once again argue that performance metrics, billings numbers, and growth percentages were literally accurate and thus inactionable. As stated above, literal accuracy is an insufficient shield against liability if the context surrounding those statements, or material facts omitted therefrom, conveyed a misleading picture to the market. Statements hyping "strong performance in…enterprise," "strong enterprise referrals," representing that they are seeing the "enterprise business grow," stating that "we've had that success with the big enterprise customers…," and assuring investors that "we have the right strategies with these enterprise customers…," collectively and misleadingly conveyed to the market that Defendants employed a successful GTM strategy to grow its enterprise business.

---

[8] Ironically, Defendants employ a "reference back" drafting technique here, though faulting Plaintiffs for referring back to prior paragraphs in the Complaint.

The reality, described above, differed significantly.   Moreover, that the metrics did not effectively reveal Domo's true state of affairs to investors is evidenced by the sharp price decline and torrent of analyst downgrades that followed the corrective disclosure.  Further, as explained above, Defendants did not characterize statements about the strength of Domo's enterprise business and effectiveness of its business strategies as belief or optimism but rather as fact. Defendants put forth no argument regarding the statements listed in footnotes 7 and 8 of their brief, other than to state in a conclusory fashion that they qualify as statements of opinion or optimism. Def. Br. at 18-19.   Therefore, for the reasons stated in Section II.A above, these statements are actionable.   Further, Defendants' arguments that certain of their Class Period statements are forward-looking and accompanied by nonactionable risk disclosures, and that the alleged omissions regarding Domo's enterprise business, international business, and billings growth are inactionable, all miss the mark for the reasons stated in Section II.A above.

Defendants' only "new" argument is that the SOX certifications are inactionable, based solely on a case that does not address the *falsity* of SOX certifications but rather states that the particular SOX certifications in that case did not further the *scienter* analysis. Def. Br. at 20. More on point is *In re Nature's Sunshine Products Securities Litigation*, 486 F. Supp. 2d 1301, 1308 (D. Utah 2007), where the court found that plaintiffs adequately alleged *falsity* as to SOX certifications because—as here—defendants knew the filings they certified did in fact "contain [] untrue statement[] of a material fact or omit[ted] to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report."  ¶¶ 75, 85, 103. [9]

---

[9] Defendants' "puzzle" pleading argument holds no water. Def. Br. at 7. The Complaint is carefully organized; alleges each specific material misstatement and related omission, including date and circumstances of its making and the speaker or signatory thereof; and after each group of misstatements, provides the reasons why those statements were materially false and/or

19

**B.      The Complaint Adequately Alleges a Compelling Inference Scienter**

At the pleading stage, a plaintiff must only plead facts rendering an inference of scienter at least as likely as any plausible opposing inference. *Tellabs,* 551 U.S. at 314.  "The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the smoking-gun genre, or even the most plausible of competing inferences." *Id.* at 324. Indeed, "[f]aced with two seemingly equally strong inferences, one favoring the plaintiff and one favoring the defendant, it is inappropriate" for a court to "make a determination as to which inference will ultimately prevail" because that would "invade the traditional role of the factfinder." *Pirraglia v. Novell, Inc.,* 339 F.3d 1182, 1188 (10th Cir. 2003).  The court must review ***all*** allegations ***holistically***. *Matrixx,* 563 U.S. at 48. Defendants "cannot secure dismissal by cherry-picking only those allegations susceptible to rebuttal and disregarding the remainder." *In re Philip Servs. Corp. Sec. Litig.*, 383 F. Supp. 2d 463, 475-76 (S.D.N.Y. 2004).

**1.      The Complaint Adequately Alleges Defendants' Recklessness**[10]

In the Tenth Circuit, proof of recklessness is sufficient to establish scienter. *See Weinstein v. McClendon*, 757 F.3d 1110, 1114 (10th Cir. 2014). "[A] defendant acts recklessly when his or her conduct amounts to an extreme departure from the standards of ordinary care, and presents a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of the danger." *In re Zagg Sec. Litig.*, No. 12-CV-852, 2014 U.S. Dist. LEXIS 15783, at *14 (D. Utah Feb. 7, 2014) (citing *City of Phila. v. Fleming*

---

misleading by omission when made.  Courts have repeatedly found this style of pleading permissible. *See In re Williams,* 339 F. Supp. 2d at 1261; *In re Intuitive Surgical Sec. Litig.,* 65 F. Supp. 3d 821, 831 (N.D. Cal. 2014).  The Complaint's allegations are sufficiently particularized to provide Defendants with fair notice of the substance of the claims. Defendants' arguments prove they are not "puzzled" because they are able to identify the false statements and attempt to refute them through their own version of the facts. Nothing more is required.

[10] The Supreme Court and the Tenth Circuit have repeatedly declared, however, that the "absence of a motive allegation" is "not dispositive."  *Matrixx,* 563 U.S. at 48; *see also Tellabs*, 551 U.S. at 325; *Pirraglia*, 339 F.3d at 1191 n.12.

20

*Cos.,* 264 F.3d 1245, 1260 (10th Cir. 2001)), *aff'd,* 797 F.3d 1194 (10th Cir. 2015).   The Complaint is replete with facts that, considered holistically, give rise to a strong and compelling inference that Defendants acted with knowledge, or at a minimum, acted recklessly.

**a)   The CW Allegations Contribute to the Inference of Scienter**

The statements of twelve CWs, whose tenures at Domo collectively span a time frame beginning years before the IPO and running through October 2019, a month after the Class Period, contribute to the compelling inference of scienter.   ¶¶ 40-54. Courts in this Circuit have found that allegations from confidential witnesses can support a finding of scienter. *See, e.g., Better v. YRC Worldwide Inc.,* No. 11-2072-KHV, 2012 U.S. Dist. LEXIS 136749, at *10-11 (D. Kan. Sept. 25, 2012); *In re SemGroup Energy Partners, L.P. Sec. Litig.,* 729 F. Supp. 2d 1276, 1290 n.1 (N.D. Okla. 2010); *Mishkin v. Zynex Inc.,* No. 09-cv-00780-REB-KLM, 2011 U.S. Dist. LEXIS 34467, at *7 (D. Colo. Mar. 30, 2011).   A court should give weight to statements of a confidential witness where those statements are supported by detail "regarding the basis of the informant's knowledge and the knowledge itself." *In re Thornburg Mortg., Inc. Sec. Litig.,* 824 F. Supp. 2d 1214, 1226 n.11 (D.N.M. 2011), *aff'd sub nom. Slater v. A.G. Edwards & Sons,* 719 F.3d 1190 (10th Cir. 2013). This is especially true where confidential witnesses corroborate each other. *See In re Daou Sys., Inc.,* 411 F.3d 1006, 1015 (9th Cir. 2005); *In re Cabletron Sys., Inc.,* 311 F.3d 11, 29 (1st Cir. 2002).   Here, the Complaint identifies the ***twelve*** CWs, specifies each CW's role within Domo, title, position, length of employment, and job responsibilities, all of which establish the basis of their knowledge, and thus "are entitled to significant weight." *Mishkin,* 2011 U.S. Dist. LEXIS 34467, at *19; ¶¶ 40-54.   The CW allegations are particularly persuasive due to the sheer volume and consistency of accounts despite the varying time frames.

The CW allegations establish Defendants' knowledge (or at minimum, recklessness) regarding Domo's difficulties generating enterprise business (as well as the reasons for those

21

struggles)[11] and growing internationally, ¶¶ 45, 52, 53 (CW8). According to the CWs, the enterprise business issues were a common topic of discussion throughout the Company (CW3, CW4, CW10), ¶¶ 44, 46, 50, and Domo used its own platform internally to provide *all employees*, including Defendants James and Felt, with up-to-date access to all Domo's data, including up-to-date information regarding acquisition of new enterprise customers and international business (CW2, CW3). Moreover, the CWs establish that Defendant James kept changing the sales pitch because he knew that Domo's lack of identity and unclear sales message prevented enterprise client acquisition; he even joined sales staff on visits to potential customers and thus saw these struggles firsthand (CW6, CW9, CW10, CW11), ¶¶ 47, 48, 50, 51. The CWs also confirm that Defendants James and Felt "kept close tabs" on the impact the enterprise and international business struggles had on billings-- not only through their access to Domo's platform, but also through their access to Netsuite (CW4, CW5, CW6). ¶¶ 53, 54.

The voluminous, consistent, and detailed CW allegations suffice to establish an inference of scienter that is at least equally as compelling as any opposing inference. Cherry-picking CW allegations based on time frame or job title, Defendants ignore the Supreme Court's directive to assess scienter holistically, ignore that there are *twelve* CWs that cover a time frame beginning pre-IPO all the way until after the Class Period, includes CWs that held senior positions like President, Chief Operating Officers/Chief Analytics Officer, Chief of Staff, Senior VP of Consulting, VP, manager of analytics/business operations, includes CWs that had *direct communications with the Exchange Act Defendants* regarding the undisclosed material facts alleged in the Complaint, and *all tell the same story*. ¶¶ 40-54. Defendants' challenges fall flat.

---

[11] CW1, CW2, CW3, CW4, CW6, CW9, CW11; ¶¶ 40, 41, 43, 44, 46, 47, 48, 51.

**b)      Defendants' Statements Contribute to the Inference of Scienter**

The Exchange Act Defendants' own statements in SEC filings and on earnings calls establish that they paid close attention to Domo's enterprise business, international business, and billings growth throughout the Class Period.  Specifically, Defendants represented repeatedly that they placed particular "focus" on growing Domo's enterprise business, and at the end of the Class Period, attributed weakness in that business to their "overfocus." *See, e.g.,* ¶¶ 57, 61, 73, 83, 86, 89, 94, 104, 110.  Similarly, Defendants repeatedly represented that they were "focused" on growing Domo's international operations."  ¶¶ 62, 72, 78, 87, 96.  Defendants also spoke on these topics repeatedly and comprehensively, thus putting themselves forth as knowledgeable. Speaking with detail and "certitude" contributes to the inference of scienter. *Utesch v. Lannett Co.*, 385 F. Supp. 3d 408, 422 (E.D. Pa. 2019).  If they did not possess that knowledge (which is highly unlikely), then they were reckless in speaking on those issues at all.

Additionally, the statements contained in Defendants' SOX certifications contribute to the compelling inference of scienter because, unlike the certifications in *Zagg,* the Exchange Act Defendants here represented that they personally designed the disclosure controls and procedures to "ensure that material information…***is made known to us***," relevant to the filings, *i.e.,* the matters at issue in this action. ¶¶ 75, 85, 103.  *See In re SemGroup,* 729 F. Supp. 2d at 1298.

**c)      Defendants' Access to Information Contributes to the Compelling Inference of Scienter**

Allegations of falsity combined with allegations of Defendants' access to the disputed information "may itself be indicative of scienter." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009); *Scott v. ZST Digital Networks, Inc.*, 896 F. Supp. 2d 877, 892 (C.D. Cal. 2012).  Here, the Complaint alleges falsity and also establishes that the Exchange Act Defendants had access to facts contradicting their statements.  Indeed, Domo's platform, used

23

internally, is designed to give all employees, including Defendants James and Felt, access to the Company's information—such as data on its enterprise business, international business, and billings—in real time, which as the Complaint alleges, Domo kept up-to-date. The Complaint also alleges that Defendants Felt and James had access to Domo's billings metrics through Netsuite. ¶ 54. Defendants also had access to colleagues, through direct communication, who repeatedly alerted them to issues with Domo's business strategy. *See, e.g.,* ¶¶ 40-54.

Additionally, the significance of Domo's enterprise business, international business, and billings growth to the Company's bottom line beg the inference that Defendants kept aware of relevant material facts. Domo's enterprise business accounts for **half of its revenue,** international accounts for approximately **a quarter of its revenue**, Defendants have admitted that "**our long-term growth depends in part on being able to expand internationally on a profitable basis**," and classified billings as a "key business metric." ¶¶ 58, 59, 78, 79, 86, 93, 106, 107.

Moreover, Domo sells one product—its platform. Following *Tellabs*, courts across a multitude of circuits have upheld a strong inference of scienter where the fraud involved a company's core operations—as is the case here.[12] As the Seventh Circuit reasoned in *Makor Issues & Rights, Ltd. v. Tellabs Inc., ("Tellabs II")*, it would be "exceedingly unlikely" for a CEO to be unaware of problems affecting the company's major products. 513 F.3d 702, 711 (7th Cir. 2008). *See also Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 575 (S.D.N.Y. 2012). The core operations doctrine contributes to the overall holistic assessment.

Defendants were in a position to know the omitted facts that rendered their statements misleading, understand their materiality, and realize that failure to provide complete, accurate disclosure would likely mislead investors, which—together with the other scienter allegations—

---

[12] *See, e.g., S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008); *Institutional Inv'rs Grp.v. Avaya, Inc.*, 564 F.3d 242, 268, 271 (3d Cir. 2009); *New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 14 n.3 (2d Cir. 2011).

creates a compelling inference of scienter. *In re Williams,* 339 F. Supp. 2d at 1259. [13]

### IV.   The Complaint Adequately Pleads Control Person Claims [14]

Given that the Complaint adequately alleges claims under Section 11 of the Securities Act

and Section 10(b) of the Exchange Act, as set forth above, the control person claims under Section

15 of the Securities Act and Section 20(a) of the Exchange Act are adequately pled. [15]

---

[13] Defendants ask this Court to flout the Supreme Court's requirement to conduct a holistic analysis, and instead view select allegations in isolation and conclude they do not suffice to establish scienter.  However, the Complaint does not allege that scienter stems "solely" from Defendants' positions or due to "mere access to information." Def. Br. at 23.  Defendants next mischaracterize the complaint as alleging that Defendants "should have anticipated a disappointing 2Q20." Id. The Complaint does not allege that Defendants failed to predict the future; the Complaint alleges that Defendants issued misleading statements with scienter, *i .e.*, with contemporaneous knowledge or recklessness regarding facts contradicting those statements.

[14] In a one-line footnote, Defendants challenge the Items 303 and 503 allegations ***but fail to proffer any substantive argument***. Def. Br. at 20 n.9.  "Arguments raised in a perfunctory manner, such as in a footnote, are waived." *San Juan Citizens All. v. Stiles* , 654 F.3d 1038, 1056 (10th Cir. 2011) (collecting cases).  Conclusory statements in a dispositive motion devoid of any legal analysis to which a nonmoving party may reasonably respond are similarly disfavored. *Swan Glob. Invs., LLC v. Young* , No. 18-cv-03124-CMA-NRN, 2019 WL 5095729, at *11 (D. Colo. Aug. 20, 2019) (collecting cases).  In any event, Defendants concede that Plaintiffs "plead the requirements of Items 303 and 503," Def. Br. at 20 n.9, as they must because, ¶¶ 2–9, 18, 20–33, 25, 30, 34–38, and 55–69 of the Complaint detail Defendants' false and materially misleading statements in the "offering documents," and thus necessarily set forth Defendants' violations of 17 C.F.R. § 229.503(c), which governs such documents.  Likewise, ¶¶ 7, 8, 10–13, 18, 20–33, 39, 40– 54, 69–108, and 110–18 of the Complaint set forth when and how Defendants failed to disclose known material trends to investors, as required of 17 C.F.R. § 229.303(a)(3).

[15] Should the Court determine that any part of the Complaint is deficient, Plaintiffs respectfully request leave to amend. Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend shall be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a).  Indeed, the Supreme Court has held that in the absence of an apparent reason such as "undue delay, bad faith or dilatory motive[,] . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," leave to amend should be freely given. *Foman v. Davis* , 371 U.S. 178, 182 (1962).  Plaintiffs here filed only one amended complaint, as a result of their appointment as Lead Plaintiffs, rather than to cure deficiencies in the originally filed complaint pursuant to any court ruling.  Moreover, in complex securities class actions such as this one, it is common for a court to permit multiple opportunities to correct any perceived inadequacies. See, e.g*., Geo-Grp. Commc'ns, Inc. v. Chop ra*, No. 15 Civ. 1756 (KPF), 2016 WL 390089, at *9 (S.D.N.Y. Feb. 1, 2016) (permitting amendment after rulings on two prior complaints).

Dated:  August 26, 2020

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Tamar A. Weinrib*

Jeremy A. Lieberman
Tamar A. Weinrib
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
Email: jalieberman@pomlaw.com
Email: taweinrib@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Lead Counsel for Plaintiffs*

**PETERS SCOFIELD**
David W. Scofield
*A Professional Corporation*
7430 Creek Road, Suite 303
Sandy, Utah 84093-6160
Telephone: (801) 322-2002 Ext. 102
Direct Dial: (801) 858-3402
Toll Free: (888) 296-3998
Facsimile: (801) 912-0320
Email: dws@psplawyers.com

**BRONSTEIN GEWIRTZ & GROSSMAN LLC**
Peretz Bronstein, Esq. (Pro Hac Vice Pending)
60 East 42nd Street – Suite 4600
New York, NY 10165-0006
Telephone:  (212)-697-6484

26

Email: peretz@bgandg.com

***Additional Counsel for Plaintiffs***