Ignacio E. Salceda (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
650 Page Mill Road
Palo Alto, CA  94304
Telephone:  (650) 493-9300
Facsimile:   (650) 493-6811
isalceda@wsgr.com

Gregory L. Watts (*pro hac vice*)
Stephanie L. Jensen (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI, P.C.
701 Fifth Avenue, Suite 5100
Seattle, WA  98104
Telephone:  (206) 883-2500
Facsimile:   (206) 883-2699
gwatts@wsgr.com
sjensen@wsgr.com

Gregory M. Saylin (9648)
Cory A. Talbot (11477)
HOLLAND & HART LLP
222 South Main St., Suite 2200
Salt Lake City, UT  84101
Telephone: (801) 799-5800
Facsimile:   (801) 799-5700
gmsaylin@hollandhart.com
catalbot@hollandhart.com

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| EXKAE Ltd., Lead Plaintiff, and MARISA ELLIS, JOHN MARBACH, JARRETT PATTON, and LISA DAVIS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>DOMO, INC., JOSHUA G. JAMES, BRUCE FELT, FRASER BULLOCK, MATTHEW R. COHLER, DANA EVAN, MARK GORENBERG, NEHAL RAJ, and GLENN SOLOMON,<br><br>Defendants. | Case No. 2:19-cv-00781-DAK-DAO<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>Honorable Dale A. Kimball<br><br>Magistrate Judge Daphne A. Oberg |

**TABLE OF CONTENTS**

**Page**

I.      THE COMPLAINT IS AN IMPERMISSIBLE PUZZLE PLEADING............................ 1

II.     PLAINTIFFS LACK STANDING TO PURUSE A SECTION 11 CLAIM...................... 1

        Lead Plaintiff Lacks Standing................................................................................. 1

        Other Plaintiffs Lack Standing............................................................................... 2

III.    PLAINTIFFS FAIL TO PLEAD A FALSE OR MISLEADING STATEMENT.............. 3

IV.     PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER IN
        RESPECT OF THEIR SECTION 10(b) CLAIM ............................................................. 7

CONCLUSION.................................................................................................................... 10

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Anderson v. First Sec. Corp.*,
    249 F. Supp. 2d 1256 (D. Utah 2002)...................................................................................9

*Anderson v. Spirit Aerosystems Holdings, Inc.*,
    827 F.3d 1229 (10th Cir. 2016) .................................................................................8, 9

*APA Excelsior III L.P. v. Premiere Techs., Inc.*,
    476 F.3d 1261 (11th Cir. 2007) .................................................................................2

*De Vito v. Liquid Holdings Grp., Inc.*,
    2018 WL 6891832 (D.N.J. Dec. 31, 2018)...............................................................3

*Hampton v. root9B Techs., Inc.*,
    897 F.3d 1291 (10th Cir. 2018) .................................................................................5

*Hildes v. Arthur Andersen LLP*,
    734 F.3d 854 (9th Cir. 2013) .................................................................................1, 2

*In re Glob. Crossing, Ltd. Sec. Litig.*,
    313 F. Supp. 2d 189 (S.D.N.Y. 2003).....................................................................1, 3

*In re Gold Res. Corp. Sec. Litig.*,
    957 F. Supp. 2d 1284 (D. Colo. 2013),
    *aff'd*, 776 F.3d 1103 (10th Cir. 2015)....................................................................5, 6

*In re HealthSouth Corp. Sec. Litig.*,
    261 F.R.D. 616 (N.D. Ala. 2009)...............................................................................2

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
    667 F.3d 1331 (10th Cir. 2012) .................................................................................5

*In re Nature's Sunshine Prods. Sec. Litig.*,
    486 F. Supp. 2d 1301 (D. Utah 2007).......................................................................6

*In re OSG Sec. Litig.*,
    971 F. Supp. 2d 387 (S.D.N.Y. 2013).......................................................................3

*In re Wachovia Equity Sec. Litig.*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011).......................................................................3

*In re Zagg Sec. Litig.*,
    797 F.3d 1194 (10th Cir. 2015) .................................................................................6

*Karacand v. Edwards*,
    53 F. Supp. 2d 1236 (D. Utah 1999)........................................................................10

*Kessman v. Myriad Genetics, Inc.*,
    2019 WL 1330363 (D. Utah Mar. 25, 2019) .........................................................7, 8, 10

*New Jersey v. Sprint Corp.*,
    531 F. Supp. 2d 1273 (D. Kan. 2008)........................................................................3

*Perry v. Duoyuan Printing, Inc.*,
    2013 WL 4505199 (S.D.N.Y. 2013)...........................................................................3

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014) ...................................................................................9

*Rumbaugh v. USANA Health Sci., Inc.*,
    2018 WL 5044240 (D. Utah Oct. 17, 2018) ...............................................................7

*Santa Fe Indus., Inc. v. Green*,
    430 U.S. 462 (1977)....................................................................................................7

*Scott v. ZST Dig. Networks, Inc.*,
    896 F. Supp. 2d 877 (C.D. Cal. 2012) .......................................................................9

*TDC Lending LLC v. Private Capital Grp., Inc.*,
    340 F. Supp. 3d 1218 (D. Utah 2018)........................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)....................................................................................................8

*Webb v. SolarCity Corp.*,
    884 F.3d 844 (9th Cir. 2018) .....................................................................................9

*Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*,
    426 F. Supp. 3d 864 (D. Kan. 2019)..........................................................................5

*Zhang v. LifeVantage Corp.*,
    2017 WL 2599883 (D. Utah June 15, 2017)..............................................................9

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) .....................................................................................9

## RULES

Fed. R. Civ. P. 8(a) .................................................................................................1, 3

Fed. R. Civ. P. 9(b) ....................................................................................................3

Plaintiffs' Opposition fails to rehabilitate the Complaint's deficiencies. The Complaint should be dismissed in its entirety and with prejudice.

## I.    THE COMPLAINT IS AN IMPERMISSIBLE PUZZLE PLEADING

Plaintiffs concede that they list groups of challenged statements and only "after each group" recite a repetitive and undifferentiated laundry list of reasons why the entire group of statements was purportedly misleading. Opp. at 19-20, n.9. By grouping them, Plaintiffs left it to Defendants (and the Court) to guess the purported reasons why each particular statement was misleading. Mot. at 7. That Defendants attempt to put the Complaint's puzzle pieces together does not change its nature: it is still a puzzle and should be dismissed under Rule 8(a).

## II.    PLAINTIFFS LACK STANDING TO PURSUE A SECTION 11 CLAIM

***Lead Plaintiff Lacks Standing.*** EXKAE admits that it did not purchase Domo stock in the IPO, but instead bought its Domo (preferred) stock in June 2017, over a year ***before*** the IPO. Opp. at 16-17. EXKAE also admits that its shares of preferred stock were merely "converted" into common stock in June 2018. *See id*. Ignoring Defendants' controlling and persuasive authority stating that a Section 11 plaintiff only has standing if the plaintiff's stock was sold in an offering covered by the offending registration statement[1] (Mot. at 9), EXKAE contends that its ***unregistered*** shares were somehow "purchased…pursuant and/or traceable to" the IPO Registration Statement. ¶ 18. EXKAE relies on *Hildes v. Arthur Andersen LLP*, 734 F.3d 854 (9th Cir. 2013), a non-controlling and distinguishable decision, as its only support. In *Hildes*, the

---

[1] Plaintiffs' own authority agrees with this well-settled interpretation of Section 11. *See In re Glob. Crossing, Ltd. Sec. Litig*., 313 F. Supp. 2d 189, 208 (S.D.N.Y. 2003) ("plaintiffs who purchased securities not issued pursuant to the misleading registration statement lack standing as surely as purchasers of other securities entirely.").

1

plaintiff *exchanged* his shares of Company A for shares of Company B upon consummation of a merger that required an S-4 registration statement and shareholder approval. *See id*. at 856-58. First and fundamentally, the shares of Company B the plaintiff received were *issued pursuant to the challenged registration statement*. In addition, the plaintiff was not "irrevocably commit[ted]" to the exchange because (a) he and his company could have declared Company B in breach of the merger agreement due to its false financial statements in the S-4, or (b) his company's shareholders could have voted against the merger had the S-4 been truthful. *See id*. at 860-61. Here, EXKAE's preferred *Domo* shares were *automatically converted* into common *Domo* shares. Ex. 2 at F-24. This conversion did not require *any investment decision or action* by EXKAE, let alone its conditional agreement, approval, or vote.[2]

    *Other Plaintiffs Lack Standing.* The other plaintiffs lack Section 11 standing because they did not purchase their Domo stock in the IPO and cannot trace their shares to the Registration Statement. They bought their Domo stock over nine months *after* the IPO in a "polluted" market comprised of *more non-IPO than IPO shares*. Mot. at 9-10. Plaintiffs deny none of this. Instead, Plaintiffs ignore Defendants' cited authority and simply rest on their implausible and conclusory allegation that they purchased their shares "pursuant and/or traceable to" the Registration

---

[2] The facts related to EXKAE are far more similar to the facts in two cases cited and distinguished by the court in *Hildes* than to *Hildes* itself. 734 F.3d at 861-62. Just as EXKAE had no power to stop the conversion of its shares, in *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 476 F.3d 1261, 1264, 1276 (11th Cir. 2007), plaintiffs could not stop the exchange of their shares in a merger because they had entered into a "binding commitment" to sell before the registration statement was filed. As the Eleventh Circuit stated, a "pre-registration purchaser falls outside the scope of Section 11." *Id*. at 1276. Similarly, in *In re HealthSouth Corp. Sec. Litig*., 261 F.R.D. 616, 647 (N.D. Ala. 2009), the plaintiff purchasers of *unregistered* bonds, even though they intended to convert the bonds to registered bonds after the filing a registration statement, could not assert a Section 11 claim because their "decision to purchase the unregistered bonds was made prior to the filing of the registration statement." *Hildes*, 734 F.3d at 862.

Statement. Opp. at 16. As support, Plaintiffs cite *In re Glob. Crossing*, 313 F. Supp. 2d 189 (S.D.N.Y. 2003)—a pre-*Twombly/Iqbal* decision—and *Perry v. Duoyuan Printing, Inc*., 2013 WL 4505199 (S.D.N.Y. 2013) and *In re Wachovia Equity Sec. Litig*., 753 F. Supp. 2d 326 (S.D.N.Y. 2011)—decisions that were criticized for incorrectly relying on "cases decided prior to *Twombly/Iqbal* on the pleading of traceability, or have been suspect in light of subsequent, controlling Court of Appeals case law." *De Vito v. Liquid Holdings Grp., Inc*., 2018 WL 6891832, at *16-17 (D.N.J. Dec. 31, 2018). Post-*Twombly/Iqbal*, Plaintiffs' conclusory pleading of traceability is insufficient. Mot. at 9-10.

## III.   PLAINTIFFS FAIL TO PLEAD A FALSE OR MISLEADING STATEMENT

Plaintiffs fail to plead a false or misleading statement in the IPO Registration Statement or during the class period.[3] Plaintiffs concede "this is not a case about 'fudged numbers'" and admit that Domo's disclosed business metrics—revenue, revenue growth, billings, and billings growth—were "literally accurate." Opp. at 2, 12. Plaintiffs instead argue these true metrics were misleading because Domo disclosed "nary a hint" that it "faced nearly insurmountable obstacles" and that its "billings growth rate" could not continue "at the pace Defendants repeatedly touted" and faced

---

[3] Regardless of whether the alleged misstatements were in the IPO Registration Statement and governed by Rule 9(b) (or Rule 8), or after the IPO and governed by the PSLRA, Plaintiffs fail to satisfy even the lowest of these pleading standards. Plaintiffs claim they can evade Rule 9(b)'s application to their Section 11 claim, Opp. at 11, but their own cases undermine their contention. *New Jersey v. Sprint Corp*., 531 F. Supp. 2d 1273, 1285 (D. Kan. 2008), did not even involve a Section 11 (or Securities Act) claim and held that a disavowal of already-pled fraud allegations does not avoid Rule 9(b) if a plaintiff does not "exercise[] care in differentiating asserted negligence claims from fraud claims." Likewise, *In re OSG Sec. Litig.*, 971 F. Supp. 2d 387, 396 (S.D.N.Y. 2013), states that "[b]are disclaimers are insufficient to shield any claims that actually sound in fraud from the requirements of Rule 9(b)." Here, Plaintiffs allege a theory of fraud that runs from the IPO through the purported class period based on the same, repeated misstatements and omissions and premised on claims that Defendants "knew" the "adverse facts" were "being concealed from the public." Mot. at 8-9.

3

"significant risk of deceleration." *Id*. at 1, 3. Domo's actual disclosures, alleged or incorporated by reference in the Complaint, contradict Plaintiffs' fanciful contentions.

Domo *disclosed* the risks and obstacles to its business strategy in the IPO Registration Statement and in its periodic SEC filings, particularly as they related to its focus on enterprise and international customers, marketing to c-suite executives, and offering broad platform capabilities to numerous business segments, something Domo characterized as "Proven Enterprise Readiness," ¶ 57, and CW1 pejoratively described as "a mile wide and an inch deep," ¶ 41. Mot. at 3-4, 13-15. Plaintiffs argue these risk disclosures were "generic" and "catch-all." Opp. at 5, 14. Even a cursory reading of the disclosures shows they warned of the precise issues that ultimately materialized in 2Q20. Mot. at 3, 13-14.

These risks and obstacles clearly *were not insurmountable* at the time of the IPO or afterwards; indeed, Domo's billings and revenue consistently grew leading up to the IPO. *Id*. at 6, 15. Following the IPO, using the same business strategy about which the CWs complain, Domo met or achieved its quarterly billings and revenue projections for an entire year, growing revenue from $108.5 million for FY18 ending 1/31/18, to $142.5 million for FY19, to $173.4 million for FY20, and grew billings from $129.5 million for FY18, to $165.4 million for FY19, to $189.2 million for FY20. *Id*. at 4-6, 15, 17-18; Ex. 2 at 64.

Defendants *never stated* in the Registration Statement or elsewhere that Domo's billings growth would continue at the same rate forever, and never hid a "risk of deceleration" in billings growth. Opp. at 1. In fact, Defendants did quite the opposite. As Plaintiffs admit, *Domo accurately disclosed its billings growth rate every quarter during the class period, revealing a declining quarter-over-prior-year-quarter billings growth rate* that went from 35% for the quarter ending

7/31/18, to 29% for the quarter ending 10/31/18, to 26% for the quarter ending 1/31/19, to 22% for the quarter ending 4/30/19, to 9% for the quarter ending 7/31/19. Mot. at 4-5. It is impossible for Plaintiffs credibly to allege that Defendants misled investors when the metric Plaintiffs argue was most important to evaluating Domo's business, Opp. at 1, 4, 7, 12, 24, and the disappointing disclosure of which is the keystone of their Complaint, ¶¶ 109-110, was disclosed to investors every single quarter.

Plaintiffs quibble over whether certain of Defendants' statements were communicated as opinions or facts, Opp. at 13-14, 19, but ignore that most of these statements were "statements of optimism that [were] not capable of objective verification" and are thus unactionable unless they inaccurately represented "the speakers' beliefs concerning then-present factual conditions[.]" *Hampton v. root9B Techs., Inc.*, 897 F.3d 1291, 1299 (10th Cir. 2018); *see also* Mot. at 11-12, 18. For example, Plaintiffs fail to recognize that Defendants' statements of Domo's "Proven Enterprise Readiness" is "vague…management-speak upon which no reasonable investor would base a trading decision," Opp. at 13, and is precisely why Defendants cited *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1340 (10th Cir. 2012), as support. Mot. at 12.

Plaintiffs claim the bespeaks caution doctrine and the PSLRA's Safe Harbor do not protect forward-looking statements because Domo's risk factors lacked meaningful cautionary language. Opp. at 14, 19. But the risk factors were specifically tailored to Domo's actual business strategy and risks, and warned of the exact risks that ultimately materialized in 2Q20. Mot. at 3, 12-14, 19.[4]

---

[4] Plaintiffs' reliance on *Yellowdog Partners* and *Gold Resource* is misplaced. Unlike here, the courts' analyses in both decisions turned on the fact that defendants put forward "mixed statements of both present and future events" that they later sought to immunize. *See Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*, 426 F. Supp. 3d 864, 870 (D. Kan. 2019); *In re Gold Res. Corp. Sec. Litig.*, 957 F. Supp. 2d 1284, 1295 (D. Colo. 2013), *aff'd*, 776 F.3d 1103 (10th Cir. 2015).

5

The SOX certification allegations add nothing.[5] If the other challenged statements were not false or misleading, then neither were the certifications that Domo's periodic filings contained no materially false or misleading statements. Mot. at 20. That Messrs. James and Felt "designed" or "caused to be designed" Domo's disclosure controls is a meaningless distinction to the Tenth Circuit's holding in *In re Zagg Sec. Litig.*, 797 F.3d 1194, 1205 (10th Cir. 2015), which found the certifications unactionable. *In re Nature's Sunshine Prods. Sec. Litig.*, 486 F. Supp. 2d 1301, 1305-1307 (D. Utah 2007), is inapposite because there the company's outside auditor told the SEC that the company's CEO violated the FCPA and tried to cover it up by issuing a false representation letter to the outside auditor and a false SOX certification.

Plaintiffs argue that Domo should not only have disclosed its business strategies as it did, *supra* at 4-5, but also should have disclosed that these strategies were bad ideas and doomed to fail. Opp. at 3, 4, 6, 8. This argument founders. *First*, despite these maligned strategies, Domo exceeded its revenue and billings projections for years, including all but the last quarter of the putative class period, and grew its revenue and billings from $108.5 million and $129.5 million before the IPO to $173.4 million and $189.2 million at the end of FY20, respectively. *See supra* at 4-5. *Second*, except for Domo's focus on enterprise customers, the Complaint alleges no facts

---

Moreover, *Gold Resource* involved truly boilerplate language saying that the forward-looking statements may "involve risks and uncertainties" and were "based upon information available" to defendants at that time. 957 F. Supp. 2d at 1297. That language stands in stark contrast to Defendants' clearly articulated risk disclosures here. Mot. at 13-14.

[5] The same is true of Plaintiffs' Item 303 and 503 allegations because Plaintiffs merely recite the general requirements of Item 303 and 503 and fail to allege how either of these Items were purportedly violated. Mot. at 20, n.9 (citing ¶¶ 119-123). Ironically, in one of three large footnotes at the end of their Opposition, Plaintiffs criticize Defendants for pointing out the emptiness of Plaintiffs' Item 303/503 allegations in a footnote. Opp. at 25 n.14.

that any of these strategies led to Domo's disappointing 2Q20 results. *Third*, there is no allegation that Defendants believed at the time of the IPO, at any point during the class period, or even now that these business strategies were a mistake, and there is no allegation that Domo has since altered these strategies. Companies are not required to denigrate their own products, markets, business plans, and/or strategies. *See Rumbaugh v. USANA Health Sci., Inc.*, 2018 WL 5044240, at \*6-7 (D. Utah Oct. 17, 2018) (rejecting plaintiffs' theory that defendant was "dealing in 'half-truths'" by not disclosing "every detail" about the company's challenges, and stating that companies "are not obligated to 'self-flagellat[e.]'") (citations omitted). And even if these strategies were poor decisions when viewed with the benefit of hindsight, the federal securities laws are not intended to protect against "mismanagement." *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 479-80 (1977).[6]

## IV. PLAINTIFFS FAIL TO PLEAD A STRONG INFERENCE OF SCIENTER IN RESPECT OF THEIR SECTION 10(b) CLAIM

Plaintiffs argue that they plead a strong inference of scienter because they plead a strong inference of recklessness. Opp. at 20-21. But "recklessness is a high bar" that requires an "extreme departure from the standards of ordinary care" and presents a danger of misleading investors that "is either known to the defendant or is so obvious that the actor must have been aware of it." *Kessman*, 2019 WL 1330363, at \*6 (internal quotations and citations omitted). Here, Plaintiffs provide no particularized allegations showing that Defendants' disclosures of Domo's business strategies and their attendant risks, coupled with the disclosure of accurate key business metrics,

---

[6] Plaintiffs argue falsity is proven by the decline in the price of Domo's stock after its disclosure of its disappointing 2Q20 results. Opp. at 2, 19. If this were true, every securities class action would sufficiently plead falsity since they all follow a stock price drop. "The securities laws are not meant to 'provide investors with broad insurance against market losses[.]'" *Kessman v. Myriad Genetics, Inc.*, 2019 WL 1330363, at \*9 (D. Utah Mar. 25, 2019) (citation omitted).

were an "extreme departure from the standards of ordinary care," or that Mr. James and Mr. Felt knew these disclosures presented a danger of misleading investors. *Id*.

Plaintiffs argue Defendants "cherry-pick" among Plaintiffs' allegations and fail to examine the Complaint holistically. Opp. at 20, 25 n.13. Not so. Defendants provide a textbook holistic examination of the Complaint's scienter allegations. The Motion and this Reply examine the alleged misstatements and their context, the CW allegations, the positions and access to information allegations, and the utter lack of a motive, and demonstrate the implausibility of Plaintiffs' scienter allegations. Mot. at 20-25; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007).

Plaintiffs argue that the CW allegations plead a strong inference of scienter because a few of the CWs held senior positions within Domo. Opp. at 22. But Plaintiffs ignore that these CWs either did not work at Domo at any point during the class period (CW1, CW5, CW12) or left Domo within a few months of the IPO (CW9, CW11), precluding them from knowing what Mr. James and Mr. Felt knew throughout the class period. Mot. at 20-21. Plaintiffs also ignore that the other CWs were low-level consultants or account managers with little-to-no interaction with Mr. James and Mr. Felt, and that those who did interact with them provide no details of information known to Mr. James and Mr. Felt that contradicted their public statements. *Id*. at 21.

Plaintiffs argue that Defendants' "focus" on growing Domo's enterprise and international business, their senior positions, and their access to information contained in Domo's platform and "billings metrics through Netsuite" create a strong inference of scienter. Opp. at 23-24. But allegations that executives were "focused" on an issue are insufficient to show that they "actually reviewed" specific data that contradicted their public statements. *Anderson v. Spirit Aerosystems*

8

*Holdings, Inc.*, 827 F.3d 1229, 1246 (10th Cir. 2016). "General allegations" of "access to information" are not enough. *Anderson v. First Sec. Corp.*, 249 F. Supp. 2d 1256, 1270 (D. Utah 2002). "[P]laintiff[s] must specifically identify the facts a defendant had access to that contained red flags." *TDC Lending LLC v. Private Capital Grp., Inc.*, 340 F. Supp. 3d 1218, 1228 (D. Utah 2018).[7] Here, the so-called "red flag" of "billings metrics" in Netsuite were publicly disclosed every quarter, and Plaintiffs do not identify any other specific information to which Defendants allegedly had access that contradicted their public statements. Mot. at 22-23.

Unable to point to specific information known to Defendants, Plaintiffs attempt to invoke the core operations doctrine for the first time in the Opposition. Opp. at 24. To do so, Plaintiffs must plead particularized facts showing that it would be "absurd" to suggest that Mr. James and Mr. Felt were not aware of material undisclosed facts during the class period that were only disclosed at the end. *Police Ret. Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014). This high standard is met only in "rare circumstances," *Webb v. SolarCity Corp.*, 884 F.3d 844, 854 (9th Cir. 2018) (citation omitted), and it is necessary (but not sufficient) that there at least be specific facts known somewhere within the company that contradict a public statement. *See Spirit Aerosystems*, 827 F.3d at 1246; *Zhang v. LifeVantage Corp.*, 2017 WL 2599883, at \*9 (D. Utah June 15, 2017). Here, plaintiffs allege no such specific facts that would cause Defendants to

---

[7] Plaintiffs' reliance on *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) and *Scott v. ZST Dig. Networks, Inc.*, 896 F. Supp. 2d 877 (C.D. Cal. 2012) is misplaced. Opp. at 23-24. In *Zucco*, the Ninth Circuit stated that plaintiffs must plead "detailed and specific allegations about management's exposure to factual information," found insufficient allegations that management used an internal database, and affirmed the district court's dismissal of the complaint. 552 F.3d at 1000-01. In *Scott*, unlike here, the defendants reported two conflicting revenue figures to government authorities that differed by a factor of "over two thousand," leading the Court to conclude the "marked disparity" between the two figures sufficiently constituted falsity and scienter. 896 F. Supp. 2d at 889.

know that any of Domo's strategies would ultimately lead to disappointing 2Q20 billings growth, particularly since these strategies resulted in Domo meeting or exceeding its billings projections every quarter throughout the class period until 2Q20.

Plaintiffs argue that an absence of motive by itself is not dispositive of scienter. Opp. at 20, n.10. Defendants never argued that it is. Instead, Defendants argued, and this Court has previously held, that it makes "a finding [of a strong inference of scienter] more difficult to sustain." *Kessman*, 2019 WL 1330363, at *8; *see also* Mot. at 24 (additional citations).

A holistic analysis of the Complaint, including the weighing of culpable and nonculpable inferences (something the Opposition does not do), shows that Plaintiffs fall far short of pleading a strong inference of scienter. Mot. at 25.

## CONCLUSION

Defendants respectfully request that the Court dismiss the Complaint with prejudice because amendment would be futile. Amendment cannot cure Plaintiffs' lack of Section 11 standing. It cannot explain away the facts that Domo disclosed its business strategies in question and their risks, disclosed every quarter the key business metrics which Plaintiffs concede were accurate (thereby revealing any deceleration in billings or revenue growth), and met or exceeded its quarterly forecasts for these metrics throughout the class period. It cannot turn unactionable forward-looking statements and risk factors into misstatements. And it cannot manufacture a strong inference of scienter for a motiveless, profitless fraud based on poorly positioned CWs who merely disagree with Domo's chosen business strategies. *See Karacand v. Edwards*, 53 F. Supp. 2d 1236, 1253 n.6 (D. Utah 1999) (granting dismissal of first post-consolidation complaint with prejudice because "amendment would be futile").

RESPECTFULLY SUBMITTED this 18th day of September, 2020.

**HOLLAND & HART LLP**

*/s/ Gregory M. Saylin*
Gregory M. Saylin
Cory A. Talbot

**WILSON SONSINI GOODRICH & ROSATI, P.C.**

*/s/ Gregory L. Watts*
Gregory L. Watts (*pro hac vice*)
Ignacio E. Salceda (*pro hac vice*)
Stephanie L. Jensen (*pro hac vice*)

*Attorneys for Defendants Domo, Inc., Joshua G. James, Bruce Felt, Fraser Bullock, Matthew R. Cohler, Dana Evan, Mark Gorenberg, Nehal Raj, and Glenn Solomon*

11