# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **EXKAE LTD., Lead Plaintiff, and JARETT PATTON, MARISA ELLIS, JOHN MARBACH, and LISA DAVIS, Individually and On Behalf of All Others Similarly Situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**DOMO, INC., JOSHUA G. JAMES, BRUCE FELT, FRASER BULLOCK, MATTHEW R. COHLER, DANA EVAN, MARK GORENBERG, NEHAL RAJ, and GLENN SOLOMON,**<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>**Case No. 2:19-CV-781-DAK-DAO**<br><br>**Judge Dale A. Kimball**<br><br>**Magistrate Judge Daphne A. Oberg** |

This matter is before the court on Defendants' Motion to Dismiss Plaintiff's Amended Class Action Complaint for Violations of the Federal Securities Laws [ECF No. 45], and Defendants' Request for Judicial Notice and Consideration of Documents Incorporated By Reference In the Amended Complaint [ECF No. 47]. On November 18, 2020, the court held a hearing on the motions by Zoom video conferencing because of the Covid-19 pandemic. Tamar A. Weinrib represented Plaintiffs and Gregory L.Watts, Cory A. Talbot, Gregory M. Saylin, Ignacio E. Salceda, and Stephanie L. Jensen represented Defendants. Having fully considered the parties' written submissions, oral arguments, and the law and facts related to the motions, the court enters the following Memorandum Decision and Order.

**BACKGROUND**

Plaintiffs brought this securities fraud class action on behalf of persons who purchased Domo common stock between June 28, 2018, and September 5, 2019 ("Class Period"), alleging violations of Sections 11 and 15 of the Securities Act of 1933 ("Securities Act claims") and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act claims"). Plaintiffs challenge fifty-eight statements as being fraudulent: eighteen statements in Domo's initial public offering ("IPO") documents and forty made by the company, Defendant Joshua James, and Defendant Bruce Felt in quarterly press releases, earnings calls, and SEC filings during the Class Period.

Founded in 2010, Domo is a software company with one product: a cloud-based platform that provides employees in an organization with real-time access via their smartphones to the organization's  business data, systems, and people.  This platform allows employees to manage, analyze, and leverage an organization's data from their smartphones.  Domo uses its own platform, providing each employee with real-time access to its data.

On June 1, 2018, Domo filed a registration statement on Form S-1 with the Securities and Exchange Commission ("SEC"), which was amended and declared effective by the SEC on June 28, 2018 ("Registration Statement").  This effective date marks the beginning of the Class Period.  On June 29, 2018, Domo filed a Prospectus with the SEC on Form 424B4 and commenced its IPO. Once Domo commenced its IPO, Domo's Class B common stock began trading on the Nasdaq Global Market.  Domo's IPO closed on July 3, 2018.  The Registration Statement and Prospectus are collectively considered Domo's "Offering Documents."  Plaintiffs allege that in these documents, Defendants touted Domo's billings growth, its focus on enterprise customers, and its

opportunity for international growth, but failed to disclose the weaknesses of its sales strategy, international marketing, and billings growth.

Plaintiffs' confidential witnesses claim that Domo struggled to grow its business with large enterprises due to an unfocused sales effort, failure to open up its platform to integrate with companies' existing data warehouses, concerns over data security, and a misdirected marketing pitch that targeted executives instead of the data analysts focused on the business intelligence of the companies.  Plaintiffs also claim that Domo oversold its ability to grow internationally when it knew its international marketing efforts were struggling.

The Offering Documents detailed Domo's increase in customers and billings year over year, identified billings as a key business metric, and stated that billings reflect sales to new customers plus subscription renewals and upsells to existing customers, and represent amounts invoiced for subscription, support, and professional services.  The Offering Documents also highlighted Domo's "proven enterprise readiness" as one of Domo's competitive strengths, asserting that Domo had invested significantly to broaden its platform capabilities and enhance security and scalability requirements for enterprises.  Domo also touted the strength of its enterprise business revenue, subscription retention rates, and enterprise business growth strategy.

Meanwhile, Plaintiffs allege that the Offering Documents only included generic "catch-all" warnings regarding revenue variability due to enterprise buying patterns and timing of large renewals.  The documents also contained representations that the risk that Domo's growth in billings, acquiring enterprise customers, and expanding internationally could fluctuate as a result of factors outside Domo's control, seasonal sales cycles, and unexpected implementation challenges with enterprise customers.  Plaintiffs claim that these general risk warnings did not alert investors that the risks had allegedly already materialized.

Plaintiffs further claim that Domo made false and misleading statements during the Class Period in financial statements and earnings calls. Many of the representations that Plaintiffs take issue with are similar to the statements made in the Offering Documents and are challenged for the same reasons. For example, Defendant James stated that Domo had the means to successfully execute its business plan when Plaintiffs assert that it was not the case.

Approximately fourteen months later, on September 5, 2019, Domo issued a press release announcing its financial results for the second quarter of 2020, with guidance for the third quarter and full fiscal year 2020, that fell short of market expectations. Domo reported billings growth of 9% year over year instead of the 17% that had been expected. Management also guided FY20 billings down from $198 million to $172 million. Domo further disclosed that it expected third quarter revenue of $41.5-42.5 million versus a consensus of $44.2 million and a loss of $1.04-1.00 per share versus a consensus $.91 loss per share. Domo further revealed a full year 2020 view with revenue of $168-169 million versus a consensus of $173.7 million and a loss of $4.10-4.00 per share versus a consensus of $3.82 loss per share.

Domo held an earnings call that same day, during which Defendant James admitted to weakness in Domo's enterprise business and explained that the billings growth deceleration occurred because Domo had been over focused on pursuing larger enterprise transactions. Defendant Felt agreed with those sentiments and confirmed a new shift in strategy toward smaller enterprise and larger corporate customers. Defendants also revealed weakness in Domo's international business and explained that despite their investment, they did not perform. Defendant James explained that the disappointing 2Q20 and reduced FY20 forecast were the result of longer than expected sales cycles with potential international and enterprise customers. Noting that the timing of larger enterprise sales closings was always hard to predict, James stated that Google's

4

announcement that it would acquire Domo competitor Looker and Salesforce's announcement that it would acquire Domo competitor Tableau Software caused many potential enterprise customers to pause and reevaluate the market. James said that Domo's international business was also impacted by these factors extending the sales process.

In response, analysts issued reports downgrading Domo, citing the disappointing report and guidance and weakness in Domo's enterprise business. Analysts blamed Defendants' misstatements for causing incorrect optimism as to the enterprise and international businesses. The next day, September 6, 2019, Domo's stock price fell 37.45% to close at $15.77 per share, which was 24.9% below the IPO price of $21.00.

Domo ultimately reported achieving $189.2 million in billings for FY20, well in excess of its revised FY20 forecast of $172 million. With the sole exception of fiscal 2Q20, which ended July 31, 2019, Domo met or exceeded its quarterly billings forecast from fiscal 3Q19 through the end of the Class Period. Also, Domo ultimately reported achieving $173.4 million in revenue for FY20, exceeding its revised FY20 forecast of $168-169 million and squarely within its original FY revenue forecast of $173-174 million.

## ANALYSIS

### Defendants' Request for Judicial Notice

In connection with their Motion to Dismiss, Defendants request that this court consider certain documents incorporated by reference into Plaintiffs' Amended Class Action Complaint and documents of which the court may take judicial notice. It is well established that when ruling on a Rule 12(b)(6) motion to dismiss, a court may consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "In securities cases it is not unusual to consider 'documents

incorporated by reference in the complaint, public documents filed with the SEC, and documents the plaintiffs relied upon in bringing suit.'" *Emps.' Ret. Sys. of R.I. v. Williams Cos.*, 889 F.3d 1153, 1158 (10th Cir. 2018). "Mere legal conclusions and factual allegations that contradict such a properly considered document are not well-pleaded facts that the court must accept as true." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997).

Plaintiffs did not oppose Defendants' request. Plaintiffs noted in their opposition to Defendant's Motion to Dismiss that Defendants had not asked the court to take judicial notice of exhibits 12, 14, or 15. While Defendants did not assert that these exhibits were incorporated by reference in Plaintiffs' Amended Complaint, Defendant's clearly requested the court to take judicial notice of these exhibits. The exhibits are publicly released press releases and a filing with the SEC. The court concludes that all of these exhibits meet the criteria for taking judicial notice of them. Accordingly, the court grants Defendants' Request for Judicial Notice and Consideration of Documents Incorporated By Reference In the Amended Complaint.

### Defendants' Motion to Dismiss Plaintiffs' Amended Class Action Complaint

Defendants move to dismiss with prejudice Plaintiffs' Amended Class Action Complaint pursuant to Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA").

### 1. FRCP 8

Defendants argue that the Amended Class Action Complaint is deficient under Rule 8 of the Federal Rules of Civil Procedure because it is an impermissible puzzle pleading that leaves it up to Defendants and the court to identify the misleading statements and to match those statements with the reasons they are allegedly false or misleading. *See Rumbaugh v. USANA Health Scis., Inc.*, 2018 WL 5044240, at *3-5 (D. Utah Oct. 17, 2018). Rule 8(a) requires that Plaintiffs plead a short and

plain statement of their claims, and Rule 8(d) specifies that each averment be "simple, concise, and direct."  Fed. R. Civ. R. 8(a), (d).

Here, Defendants contend that Plaintiffs plead vague allegations from twelve so-called "confidential witnesses" that question the wisdom of Domo's disclosed "go to market" strategy, but fail to tie these allegations to particular misstatements or omissions.  Plaintiffs, however, assert that the Complaint alleges each specific material misstatement and related omission, including date and circumstances of its making and the speaker or signatory of the statement, and after each group of misstatements, provides the reasons why those statements were materially false and/or misleading by omission when made.

While Plaintiffs list groups of challenged statements and recite a repetitive and somewhat vague list of reasons why the entire group of statements were purportedly misleading, the court concludes that the Amended Complaint is sufficient under the relatively easy notice pleading standards in Rule 8 and declines to dismiss the Amended Complaint on this basis.  To the extent that Plaintiffs fail to demonstrate how a statement is false or misleading, the court will address such issues on the merits of the claims.

## 2.  Securities Act Section 11 Claim

Plaintiffs' claim under Section 11 of the Securities Act is based on statements contained in Domo's IPO Offering Documents.  Defendants argue that Plaintiffs' Section 11 claim should be dismissed because Plaintiffs lack standing and, even if they have standing to assert a Section 11 claim, Plaintiffs fail to plead actionable false and misleading statements in the Offering Documents. "When alleging a violation of § 11, a plaintiff who 'purchased a security issued pursuant to a registration statement . . . need only show a material misrepresentation or omission to establish [a] prima facie case.  Liability against the issuer of a security is virtually absolute, even for innocent

misstatements.'"  *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1251 (10th Cir. 1997)

(quoting *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983)).

### A. Standing

Defendants contend that Lead Plaintiff EXKAE and the other individually named Plaintiffs

lack standing because they did not purchase Domo stock in or traceable to Domo's IPO Registration

Statement.  Plaintiffs assert that they meet the required pleading standard by merely alleging that

they purchased Domo securities pursuant and/or traceable to the Offering Documents issued in

connection with Domo's IPO.  As with all well-pled allegations, however, those allegations must be

supported by facts.

EXKAE bought Domo preferred stock a year before the IPO and that preferred stock

automatically converted to common shares during the IPO.  Defendant claims that because EXKAE

bought its Domo stock over a year before the IPO, it is impossible for it to plead or prove that its

stock was "sold in an offering covered" by the Registration Statement.  *Joseph v. Wiles*, 223 F.3d

1155, 1159 (10th Cir. 2000), *overruled in part on other grounds by Cal. Pub. Emps. Ret. Sys. v.

ANZ Sec. Inc.*, 137 S. Ct. 2042 (2017); 15 U.S.C. § 77k.  But Plaintiffs argue that EXKAE's

acquisition of Domo shares prior to the IPO does not negate its standing, relying on *Hildes v. Arthur

Andersen LLP*, 734 F.3d 854 (9th Cir. 2013).

*Hildes* initially appears similar to this case because it involved a plaintiff who agreed to have

his shares voted in favor of a merger prior to the issuance of a Registration Statement.  *Id.* at 860.

But he did not irrevocably commit to exchange those shares for the new company's shares prior to

the filing of the Registration Statement.  *Id.*  The court found it relevant that "misrepresentations

contained in the Registration Statement played a role in the causal chain that resulted in the

[plaintiff's] exchange of stock."  *Id.* at 860-61.  Unlike the plaintiff in *Hildes*, EXKAE did not make

investment decisions based on the Registration Statement.  EXKAE's preferred shares automatically converted into common shares and did not require any investment decision or action by EXKAE. The facts in this case are more similar to the facts of two cases cited and distinguished by the *Hildes* court.  *Id.* at 861-62.  For example, in *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 476 F.3d 1261, 1264, 1276 (11th Cir. 2007), the court found no standing for a plaintiff, who had entered into a binding commitment to exchange shares in a merger before the registration statement was filed, because a "pre-registration purchaser falls outside the scope of Section 11."  *Id.*  Because EXKAE's purchase of preferred shares a year before the IPO did not rely on the IPO's Offering Documents, EXKAE does not have standing to assert a Section 11 claim.

Defendants argue that the other individually named Plaintiffs also lack standing to bring a Section 11 claim because they purchased shares in a "polluted" market that was comprised of more non-IPO shares than IPO shares and, thus, their shares cannot be traced back to the IPO.  The earliest any of these Plaintiffs purchased shares was March 21, 2019, over nine months after the IPO and well after an additional 12,490,147 unregistered shares of Domo Class B common stock became eligible for sale in the market.  These Plaintiffs, therefore, purchased their Domo shares from a mixed or "polluted" pool of stock that contained over 54% of  non-IPO shares.  Under these facts, Plaintiffs cannot meet their burden of tracing the chain of title for their shares back to the IPO. Federal courts "have consistently held that shares bought on the market after unregistered shares have entered the market cannot be traced back to the IPO."  *In re Atossa Genetics, Inc. Sec. Litig.*, 2014 WL 4983551, at *5 (W.D. Wash. Oct. 6, 2014), *aff'd in part, rev'd in part, & remanded by* 868 F.3d 784 (9th Cir. 2017).  "[S]ection 11 class periods must end when unregistered shares become tradeable."  *In re Initial Publ Offering Sec. Litig.*, 227 F.R.D. 65, 119 (S.D.N.Y. 2004). Plaintiffs cannot rely on their conclusory allegation that they can trace their shares back to the

Registration Statement–such an allegation is implausible given the release of unregistered shares prior to their undisputed purchase date. Accordingly, the court concludes that the other individually named Plaintiffs lack standing to bring a Section 11 claim based on the IPO Offering Documents because they purchased shares after unregistered shares began trading in the market and they cannot trace their shares back to the Offering Documents.

The court, therefore, grants Defendants' Motion to Dismiss Plaintiffs' Section 11 claim for lack of standing.

### B. Merits

Even if Plaintiffs have standing to assert a Section 11 claim, Defendants argue that Plaintiffs fail to plead actionable false and misleading statements. As an initial matter, the parties dispute whether Plaintiffs' Section 11 claim is subject to Rule 8's standard notice pleading requirements or Rule 9(b)'s heightened pleading requirements for fraud.

Defendants argue that because Plaintiffs' Section 11 claim "sounds in fraud," the Amended Complaint must meet the heightened pleading requirements of Rule 9(b). *Rubke v. Capitol Bancorp Ltd.* 551 F.3d 1156, 1161 (9th Cir. 2009) (applying Rule 9(b) to Section 11 claims when they sound in fraud); *Robach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (Rule 9(b) applies to Section 11 claims "premised on allegations of fraud."). However, Plaintiffs assert that the Tenth Circuit has held that Section 11 claims are governed by Rule 8(a)'s notice pleading standard, citing *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997). *Schwartz* did apply Rule 8's standard to a Section 11 claim. *Id.* However, the court specifically stated that it was not deciding whether a Section 11 claim that was premised on fraud triggered Rule 9(b)'s particularity requirements because the case before it was not premised on fraud. *Id.* at 1251-52. *Schwartz* cannot be read as a rejection of the cases from other Circuits applying Rule 9(b) to claims premised on

fraud.

In this case, Plaintiffs' claims do not allege that Domo provided fraudulent business data. Plaintiffs admit that all of the sales, billings, and revenue data contained in Domo's filings are accurate.  However, Plaintiffs allege that Defendants made unsupported assumptions with respect to its ability to grow and expand and failed to disclose known difficulties the company was facing. While these allegations are more akin to fraud than negligence–because they imply that Domo's statements and omissions were purposely intended to portray an inaccurate picture of Domo's business–Plaintiffs could prove their Section 11 claim by alleging that these misstatements or omissions were merely materially inaccurate, not fraudulent.  Plaintiffs' allegations in its Section 11 claim state that the Offering Documents were "inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated."  Am. Compl. ¶135.  These allegations are general enough to include both fraud and negligence.

Because it is debatable as to whether Plaintiffs' Section 11 claim is premised on fraud and the Tenth Circuit has never specifically adopted a Rule 9(b) exception for Section 11 claims premised on fraud, the court will apply the Tenth Circuit's general rule that Section 11 claims are governed by Rule 8's notice pleading standard.

Under either standard, Defendants argue that Plaintiffs have failed to plead facts sufficient to show that Domo's Registration Statement contained a false statement of material fact or omitted material facts necessary to make a challenged statement not misleading.  15 U.S.C. § 77k(a).  In determining whether Plaintiffs meet their burden, the court must review a challenged statement in the context of the entire document, thus "in light of all its surrounding text, including hedges, disclaimers, and apparently conflicting information."  *Omnicare, Inc. v. Laborers Dist. Council*

11

*Constr. Indus. Pension Fund*, 575 U.S. 175, 190 (2015).

Plaintiffs challenge eighteen statements in the Registration Statement.  Defendants contend that these statements are not materially false or misleading because they are: (1) accurate statements of past performance; (2) nonactionable opinions or statements of corporate optimism, (3) forward-looking statements protected by the "bespeaks caution" doctrine; (4) nonactionable risk factors; and/or (5) not materially misleading due to the alleged omissions.

Plaintiffs admit that Domo's statements about past performance are accurate. Accurate statements about past performance are "not actionable as a matter of law."  *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 998 (10th Cir. 2002).

In addition, "'pure statements of opinion,' . . . and 'statements of optimism that are not capable of objective verification' are not material misstatements unless they inaccurately represent 'the speakers beliefs concerning then-present factual conditions."  *Hampton v. root9B Techs, Inc.*, 897 F.3d 1291, 1299 (10th Cir. 2018).  An opinion is actionable only if a plaintiff can show it is subjectively false, does not fairly align with the information in the issuer's possession at the time, or the speaker did not conduct a meaningful inquiry.  *Omnicare*, 575 U.S. at 189, 199.

Plaintiffs have not demonstrated that any of the challenged opinions were unjustified. Domo's business continued to grow throughout the Class Period.  While Domo's billings did not meet forecasted levels a year after the IPO, this does not make statements regarding the strength of Domo's ability to grow inaccurate or misleading.  Plaintiffs question whether certain statements were communicated as opinions or facts but ignore that most of these statements were statements of optimism that were not capable of objective verification and are thus not actionable unless they inaccurately represented "the speakers' beliefs concerning then-present conditions."  *Hampton v. roots9B Techs., Inc.*, 897 F.3d 1291, 1299 (10th Cir. 2018).  For example, Domo's use of the phrase

"proven enterprise readiness" is obviously "vague . . . management-speak upon which no reasonable investor would base a trading decision." *In re Level 3 Communications, Inc. Sec. Litig.*, 667 F.3d 1331, 1340 (10th Cir. 2012).

Plaintiffs rely on several confidential witnesses who opine as to why Domo did not meet the forecasted billing numbers a year after the IPO. But even those witnesses do not agree about the reasons for a decline in billings or the proper strategy for growth. Every business will have employees that disagree on the correct strategy for growth, especially in businesses involved in emerging technologies with uncertain markets. Those disagreements, between even Plaintiffs' witnesses, occur because they are based on opinions. A company is not required to list in its Offering Documents every concern that every employee has regarding the company's business strategy. Domo disclosed its strategy, why it thought it would be successful, and the limitations on that strategy. Plaintiffs have not alleged anything that demonstrates that these differences of opinion as to strategy amount to anything misleading.

The bespeaks caution doctrine "provides a mechanism by which a court can rule as a matter of law (typically on a motion to dismiss for failure to state a cause of action or a motion for summary judgment) that defendants' forward-looking representations contained enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud." *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1120-21 (10th Cir. 1997). Here, many of the challenged statements are partially or wholly forward-looking statements regarding Domo's future objectives to expand its footprint with enterprise customers, expand its U.S. and international customer base, capitalize on global digital transformation, and develop a select number of third-party relationships. Domo met or exceeded its forecasts for a full year after the IPO. These forward looking statements proved accurate for a long period of time. Obviously the further out one goes from statements in the IPO

13

Offering Documents  the less materiality these forward-looking statements have.  Any reasonable investor would realize that market conditions can change over time, especially in emerging technologies like Domo's cloud-based data platform.  A reasonable investor reads a public statement in context, not in isolation.  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190 (2015).  The Offering Documents did not promise billings growth indefinitely into the future, and no reasonable investor would think that a company could forecast billings growth that far into the future.

Importantly, Domo's forward-looking statements were all accompanied by appropriate cautionary language.  Plaintiffs claim that the risk factors included in the Offering Documents were boilerplate, but they warned of the precise issues that ultimately materialized in 2Q20.  It is unclear what more Plaintiffs believe Domo should have said regarding the risk factors.  Plaintiff claims that nothing in the risk disclosures alerted investors to specific current risks.  The risks were not exactly current risks given that they did not materialize for a year after the IPO.  But the risk factors are so well tailored to what actually happened, they render Defendants' other statements inactionable.  Defendants provided investors with the material information needed to make an informed decision about its stock.

In addition, the alleged omissions to the Offering Documents are inactionable because they are untethered to any statement that was rendered misleading by their omission, are contradicted by the alleged facts, were actually disclosed, and/or Domo had no duty to disclose them.  Claimed omissions with respect to Domo's "go-to-market" strategy are belied by the statements dealing with Domo's broad platform in the Registration Statement.  Domo disclosed its strategies.  The fact that Plaintiff's question the effectiveness of those strategies does not mean that material omissions regarding the strategy occurred.  Plaintiffs' allegations reflect nothing more than a few former

employees disagreeing with Domo's chosen sales approach.  Such disagreements do not render an explicitly disclosed strategy materially false or misleading.

Plaintiffs argue that Domo should not only have disclosed its business strategy as it did, but also should have disclosed that these strategies were bad ideas and/or doomed to fail.  Companies are not required to denigrate their own products or business plans or strategies.  *Rumbaugh v. USANA Health Sci., Inc.*, 2018 WL 5044240, at *6-7 (D. Utah Oct. 17, 2018).  Despite these maligned strategies, Domo exceeded its revenue and billings projections for years, including all but the last quarter of the class period, an entire year after the IPO.  Except for Domo's focus on enterprise customers, the Complaint alleges no facts that any of these strategies led to Domo's disappointing 2Q20 results.  In fact, Domo still believes its business strategies were correct.

Plaintiffs claim that Domo failed to disclose that it was experiencing weakness in its enterprise and international business is also contradicted by the facts.  Every business is concerned about growth and may have internal discussion regarding the best strategies going forward.  But the actual evidence does not demonstrate weakness.  Domo's enterprise customers grew from 36 as of January 31, 2014, to 385 as of April 30, 2018, to over 460 as of September 5, 2019.  Domo's revenue from international customers kept pace with Domo's growing total revenue, accounting for 23% of Domo's revenue 2Q19 through 4Q19, and 26% of Domo's revenue in 1Q20 and 2Q20.  Plaintiffs also allege that Domo did not disclose that its billings growth had dramatically slowed.  But Domo's billings consistently grew leading up to the IPO, at the time of the IPO, and for a consecutive year after the IPO.  Defendants' statements did not "affirmatively create an impression of a state of affairs which differed in a material way from the one that actually existed."  *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1028 (C.D. Cal. 2008). Therefore, even if Plaintiffs had standing to raise a Section 11 claim, Plaintiffs' allegations fail to plead a false or misleading

15

statement or omission in Domo's Offering Documents.

Accordingly, the court grants Defendants' Motion to Dismiss Plaintiffs' Section 11 claim because Plaintiffs lack standing and have failed to state a claim under Section 11 of the Securities Act.

### 3. Exchange Act Section 10(b) Claim

Defendants also move to dismiss Plaintiffs' Section 10(b) claim under the Exchange Act. To state a claim under Section 10(b), Plaintiffs must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Sci-Atlanta*, 552 U.S. 148, 157 (2008). "Rule 10b-5 encompasses only conduct already prohibited by § 10(b)." *Id.*

In the securities fraud context, the standard for surviving a motion to dismiss is the "most stringent pleading requirement in American civil law." *McCauley v. City of Chi*, 671 F.3d 611, 625 (7th Cir. 2011) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007)). Securities fraud claims are subject to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The PSLRA imposes a heightened pleading requirement for alleging intent to defraud–or scienter– with particularized facts that give rise to an inference that is at least as cogent as any competing, nonculpable explanation for a defendant's conduct. *Tellabs*, 551 U.S. at 314.

The court concludes that Plaintiffs fail to plead a false or misleading statement under Section 10(b) for the same reasons they fail to plead their case under Section 11. In addition, the PSLRA's safe harbor provides that defendants "shall not be liable" for forward-looking statements "accompanied by meaningful cautionary statements." 15 U.S.C. § 78u-5(c)(1). Nine of the 40 post-IPO statements challenged as misleading fall squarely within the Safe Harbor. These statements

16

were each accompanied by meaningful cautionary language.

Plaintiffs also challenge James' and Felt's SOX certifications attached to the 10-K and 10-Qs issued throughout the purported class period.  However, Plaintiffs fail to state a claim as to each because they merely attest that the certifier is not aware of material misstatements.  *See Zagg*, 797 F.3d at 1205 ("Plaintiffs 'bare allegation that [Defendant] lied when he certified the filings pursuant to [Sarbanes-Oxley] adds nothing substantial to the scienter calculus.'").

Plaintiffs fail to plead a strong inference of scienter under the heightened PSLRA standard. Plaintiffs rely on statements by confidential witnesses to try to establish scienter, but not one of the witnesses was even employed by Domo throughout the entire Class Period.  CW1, CW5, and CW12 were not employed by Domo at the time of the IPO or at any point during the class period.  All three had left Domo several months before the IPO.  The witnesses claim that Defendants knew the sales strategy was flawed, but that is obviously something that parties can disagree upon.  As explained above, the witnesses disagreements with Defendants does not make Defendants' positions on the matter fraud.  CW4 and CW11 provide irreconcilable explanations for Domo's alleged sales struggles.  One claims that Domo was too rigid and focused on enterprise customers, while the other claims Domo's strategy shifted too often.  Such contradictions do not support a strong inference of scienter.  These types of differences of opinion are not cogent or compelling inferences of scienter. Rule 10b-5 was never intended to protect against a difference of opinion or even mismanagement.

Plaintiffs claim that Defendants should have known that Domo's statement were misleading by virtue of their positions at Domo.  But the Tenth Circuit has "rejected the notion that knowledge may be imputed solely from an individual's position within a company."  *Zagg*, 797 F.3d at 1205. Mere access to information does not equate to knowledge or even recklessness.  *See In re Weinstein*, 757 F.3d 1110, 1114 (10th Cir. 2014).  Moreover, there are no allegations as to what information

was available that contradicted Defendants' public statements.

By alleging that Defendants should have anticipated a disappointing 2Q20, Plaintiffs engage in impermissible fraud by hindsight. Mere "allegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud." *Fleming*, 264 F.3d at 1260. Plaintiffs' fraud by hindsight allegations do not support a strong inference of scienter. Defendants never stated in the Registration Statement or SEC filings that its billings growth would continue at the same rate forever. Domo never hid the risks of a deceleration in billings growth. In fact, Defendants did the opposite. Plaintiffs admit that Domo accurately disclosed its billings growth rate every quarter during the class period, revealing a declining quarter over prior year quarter billings growth rate that went from 35% for the quarter ending 7/31/18 to 29% for the quarter ending 10/31/18 to 26% for the quarter ending 1/31/19 to 22% for the quarter ending 4/30/19 to 9% for the quarter ending 7/31/19. It is impossible for Plaintiff to credibly allege that Defendants misled investors when the metric Plaintiffs argue was most important to evaluating Domo's business was disclosed to investors every single quarter.

Typical securities fraud complaints allege some form of motive or substantial benefit received by the defendants. Such allegations are conspicuously absent in this case. Plaintiffs do not allege that James or Felt sold their Domo stock during the class period. Few, if any, investors lost more total value in their Domo stock holdings than James did when Domo disclosed disappointing results in September 2019. "Although the absence of an apparent motive does not necessarily defeat a finding of scienter, it does make such a finding more difficult to sustain." *Kessman*, 2019 WL 1330363 at *8.

In addition, Defendants shift in strategy does not support a strong inference of scienter. Defendants acknowledgment of lower billings growth in 2Q20 does not suggest that they saw it

coming.  *Anderson*, 827 F.3d at 1249.  Domo was merely responding to changing market conditions.

Domo warned of these types of risks and they came to fruition.  Domo's intention to shift its focus

to smaller enterprise and large corporate customers going forward does not support a finding of

scienter.  "[T]he implementation of the [new] policy . . . [is] at most an acknowledgment that the

company identified a better way of doing things moving forward, not an indicator that fraudulent

intent existed at the time the alleged omission occurred."  *Zagg*, 797 F.3d at 1205.

Domo was exceeding its billings and revenue forecast each and every quarter.  There is no

cogent or compelling reason the slowdown in billings during 2Q20 was the result of anything other

than the nonculpable one explained by Defendants.  Large players acquiring competitors caused

Domo's large enterprise customers to press pause and reevaluate their changing options.  This was a

change in the market that Domo could not control and Domo's strategy of focusing on large

enterprise customers ended up causing a slowdown.  But the sales were merely pushed into later

periods and Domo rebounded.  If Domo had focused on a greater variety of businesses, it may have

weathered the changing market better, but there is no actual evidence that is the case and that is not

evidence of fraud.

"Faced with two seemingly equally strong inferences, one favoring the plaintiff and one

favoring the defendant, it is inappropriate" for a court to "make a determination as to which

inference will ultimately prevail."  *Pirraglia v. Novell*, *Inc.*, 339 F.3d 1182, 1188 (10th Cir. 2003).

Plaintiffs, however, do not present an equally strong inference.  Plaintiffs repeatedly refer to

Domo's strategy as ineffective, even to the point of contradicting themselves–Domo's strategy was

too focused on large enterprise customers or too disjointed and "all over the place."  But such

allegations are not supported by the facts and, even if they were, Section10(b) does not protect

against mismanagement or a difference in opinion.  Plaintiffs are claiming that Defendants

intentionally engaged in fraud, with no facts to support it.  Changing market conditions can cause a disappointing quarter to even the best run companies.  A decrease in billings growths in one quarter is not evidence of fraud, especially when they are the result of conditions about which the company warned investors.  Plaintiffs do not present a compelling or plausible inference of scienter in this case.

Moreover, Plaintiffs fail to allege any kind of recklessness which would be sufficient to establish scienter.  *See Weinstein v. McClendon*, 757 F.3d 1110, 1114 (10th Cir. 2014). "Recklessness is a high bar" that requires an "extreme departure from the standards of ordinary care" and presents a danger of misleading investors that "is either known to the defendant or is so obvious that the actor must have been aware of it." *Kessman*, 2019 WL 1330363, at *6.  Here, Plaintiffs provide no particularized allegations showing that Defendants' disclosures of Domo's business strategies and their attendant risks, coupled with the disclosure of accurate key business metrics, were an extreme departure from the standards of ordinary care.

Plaintiffs claim that Defendants cherry-pick allegations and fail to address the Complaint holistically.  But when the court reviews Domo's statements, risk disclosures, and complete lack of motive holistically, it demonstrates that Plaintiffs' claims of fraud are implausible.  The court, therefore, grants Defendants' motion to dismiss Plaintiffs' Section 10(b) claim.

### 4. Control Person Claims

Because the Complaint does not state a primary violation, Plaintiffs' "control person" claims under Section 15(a) of the Securities Act and Section 20(a) of the Exchange Act necessarily fails. *United Food & Commer. Workers Union Local 880 Pension Fund v. Chesapeake Energy Corp.*, 774 F.3d 1229, 1233 (10th Cir. 2014); *Smallen*, 950 F.3d at 1315.  Accordingly, the court grants Defendants' motion to dismiss Plaintiffs' Section 15(a) of the Securities Act and Section 20(a) of

the Exchange Act claims.

## 5. Dismissal with Prejudice

"Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009). Although the court would typically allow a party to amend to cure deficiencies, the court concludes that amendment would be futile. Plaintiffs could not cure their lack of standing and Plaintiffs have had adequate access to information through multiple confidential witnesses. Additional pleading could not change forward-looking statements or opinions as to the correct strategy into material misstatements or fraud. Therefore, the court dismisses Plaintiffs' Amended Class Action Complaint with prejudice.

## CONCLUSION

Based on the above reasoning, the court GRANTS Defendants' Motion to Dismiss Plaintiff's Amended Class Action Complaint for Violations of the Federal Securities Laws [ECF No. 45], and GRANTS Defendants' Request for Judicial Notice and Consideration of Documents Incorporated By Reference In the Amended Complaint [ECF No. 47].

DATED this 15th day of December, 2020.

BY THE COURT:

Dale A. Kimball,
United States District Judge